CHOUQUETTE *et al.*, Respondent, v. BARADA, *et al.*, Appellants.

1. The courts should not, in instructions to a jury, take for granted facts in issue in the cause.
2. Where a deed, purporting to be the deed of a corporation, is admitted, and no objection is made to its introduction on the ground that the corporate seal has not been proved, this objection will not be entertained in the supreme court.
3. Where an instrument purporting to be the act of a corporation has the common seal of the corporation attached and has been signed by the proper officer, it will be presumed that it was executed by authority of the corporation.
4. A will not providing for children of the testator, though voidable under section twenty of the act concerning wills and testaments, (R. C. 1825, p. 795,) by such children, is good as against strangers; unless the children assert their right against the will, the title will remain in the devisee, who will have, however, a defeasible title.
5. Where land owned by A. is in the adverse possession of B., and B. dies before the time of limitation is complete, devising his estate to his widow, but not naming or providing for his children in his will, and the widow remains in possession, not claiming under the will, but under an understanding with the children that she should enjoy the estate for life and that at her death it should go to them, and while she so remains in possession the time of limitation becomes complete and the widow's interest is levied on under a judgment against her and sold and she dies; *held*, that the agreement of the widow with the children would be valid though by parol, it not being within the statute of frauds; that the purchaser would take subject to such agreement, whether he had notice of it or not.
6. Courts should not in instructions comment on the evidence; it is the province of the jury to draw inferences from the facts in evidence; the courts should not give undue importance to particular facts in evidence by telling the juries that they are authorized to draw certain specified inferences from them.

*Appeal from St. Louis Land Court.*

This was an action in the nature of an action of ejectment to recover possession of a parcel of ground in the city of Carondelet. The cause has heretofore been before the supreme court, whose decision is reported in 23 Mo. 331. The defendant Barada was in possession as tenant of Sullivan and Papin, who were permitted to become parties defendant. The

defendants by their answer denied the title of the plaintiffs and alleged an adverse possession in themselves, or those through whom they claim, for more than twenty years before commencement of this suit. At the trial the plaintiff gave in evidence Brown's survey of Carondelet common; also a certified copy of an ordinance of the city of Carondelet, approved March 18, 1852, ordering the making of certain surveys and authorizing the making of deeds of quitclaim of lands embraced within said surveys; also a copy of a resolution dated August 5, 1852, of the city council authorizing the mayor to convey the lot in controversy to the children of Antoine Motier. The defendant objected to the admission of this resolution on the ground that it wanted the evidence required by the charter of its passage and authenticity. The plaintiffs then introduced in evidence the deed of the city of Carondelet, dated August 14, 1852, to certain of the plaintiffs and to others their grantors. This deed purported to be made in pursuance of said resolution of August 5, 1852. Deeds from certain of the grantees in this deed and heirs of Antoine Motier, sr., to certain of the plaintiffs were then introduced in evidence.

The defendant introduced evidence showing that between 1821 and 1824 Antoine Motier, sr., went upon the land with his family, built a log house thereon, planted an orchard, made a garden, and with his family occupied the premises in controversy until his death in 1834; that he made a will whereby, without naming or providing for any of his children, he gave all his property to his widow. This will was dated January 6, 1834, and was proved March 8, 1834. The widow got the will probated, and resided on the land with her children until evicted by Sullivan and Papin in October, 1847. Her children continued to live with her until they married, but left her as they married, except Antoine Motier, jr., who had married before his father's death and resided elsewhere. Mr. Barada, a witness for defendants, testified that he was born and had always lived in Carondelet; that he knew the Motier family well, and when Motier, sr., went

on this land and built his log house; that he drew his said will, and with the widow and at her request attended upon its probate; that after her husband's death she claimed and sued for several tracts of land in the common fields of Carondelet, which she claimed under her father Clement Delor; that her claim embraced this land, for it ran all the way to the Mississippi river; that she sued persons upon different parts of it; that she claimed the land, as witness believed, under her husband and Delor; that she claimed land under her father in the common field; that the common field came only to Fifth street; that she claimed to the river and that would include this land. The defendants also introduced a deed of the sheriff of St. Louis county, dated June 26, 1841, conveying to Sullivan and Papin all Madame Motier's interest in the land in controversy. In October, 1847, Sullivan and Papin were put in possession by the sheriff under a writ of possession issued upon a judgment in ejectment in their favor against said Madame Motier. The defendants then offered to read in evidence a lease of this land from Sullivan and Papin to Baptiste Motier, one of the children of Madame Motier, dated October 6, 1847; also the record of a suit for an unlawful detainer, begun July 2, 1850, by Sullivan and Papin against Julien Chouquette, one of the plaintiffs, for the land in controversy. Plaintiffs objected to the admission of these as irrelevant except to prove Sullivan and Papin in possession, and upon plaintiffs admitting that they had been in possession ever since the execution of said writ of possession in 1847, the court excluded them.

The plaintiffs in rebuttal introduced as a witness Antoine Motier, who testified that after his father's death his mother held the property, claiming under her husband, and claimed to occupy this land for herself and children, for herself during her lifetime, and for her children after her death; that she occupied the property without objection from her children; that she had several occasions for selling it; that he, witness, would try to persuade her to sell it and with the money buy a smaller piece of land and live upon the balance

of the money, but she would always refuse, saying that she meant to save it for her children ; that he, witness, would tell her that her children could take care of themselves, but she would refuse to sell, saying that she would save it for her children ; that he thinks his mother died in 1854 or 1855 after the making of the deed by Carondelet. Mr. Gamache testified that he was born in Stringtown, near Carondelet, and had lived in Carondelet since 1825 ; that he had heard widow Motier say that she was occupying this land for herself for her life and for her children after her death ; that he used to visit her on this land, and that at these visits she said this in conversations there ; that she died in the house on this land in 1852 ; that he heard her say that she claimed a life estate and then it was her children's ; that he heard her say this as long, as he thinks, as five years before her death ; he would not say that it was as long as six years before ; that he heard her say it two or three years before her death ; that he could not say whether he heard her say this before or after the late Mexican war ; that he may have heard it as early as 1842 or 1843.

At the request of plaintiffs the court instructed the jury as follows : " 1. The plaintiffs have shown themselves to be clothed with the documentary title to the land in controversy, and unless the defendants and those under whom they claim have had adverse possession of the premises for twenty years before the commencement of this suit, the plaintiff must have a verdict. 2. If the jury believe from the evidence that Madame Motier, after the death of her husband, did not claim the premises in controversy for herself in fee, but only claimed it for herself for life, and thereafter for the children of herself and Antoine Motier, and that this was the understanding between herself and her children after the death of Antoine Motier, then there was no adverse possession of said land by Madame Motier prior to 1847 ; and in that event the defendant can not avail himself of the statute of limitations. 3. The possession of the land by Madame Motier with her children after the death of her hus-

band was, unless shown to be otherwise, the possession of her children as heirs of Antoine Motier."

The defendants requested the court to give the following instructions, of which the court gave those numbered one and two, and refused the others: " 1. If the jury believe from the evidence that the defendants, and those from and through whom they obtained possession of the land sued for in this suit, had had a continuous possession thereof for at least twenty years next before the commencement of this suit, claiming the same adversely to all others, then they should find for the defendants. 2. The jury should disregard any claims of Madame Motier made touching this land after the sale thereof by the sheriff to Sullivan and Papin. 3. If the jury believe from the evidence that Antoine Motier took possession of the property under a claim to it by his wife, and that the defendants Sullivan and Papin and those under whom they claim had had a continuous possession thereof, claiming the same adversely to all others, for twenty years next before the commencement of this suit, they should find for the defendants. 4. The will given is evidence for the jury to consider with reference to the way in which Mrs. Motier claimed possession of this property after her husband's death. 5. If the jury believe from the evidence that the survey of the common of Carondelet by the United States was not approved by the United States until after the date of the deed of Carondelet read in evidence, then the plaintiffs acquired no title under said deed. 6. The deed of Carondelet given in evidence, and the resolution given in evidence referred to therein, are void and of no effect. 7. The resolution given in evidence by the plaintiffs the jury should disregard."

The jury found for plaintiffs.

*Todd*, for appellants.

It was error to instruct the jury that the plaintiffs had shown themselves to be clothed with the documentary title. It took questions of fact from the jury. The court erred in

giving the second instruction for the plaintiffs. The third instruction was also erroneous. The court also erred in refusing the instructions asked by defendant, in admitting the resolution authorizing the mayor to convey to Antoine Motier and others, also in excluding the lease to Baptiste Motier and the record of the unlawful detainer suit. The verdict was clearly against the evidence.

*Gantt,* for respondents.

I. The resolution introduced was properly authenticated. Besides, it is immaterial whether it was or not; the deed was no less the deed of Carondelet even if this resolution was entirely ignored. (Schwartz v. Page, 13 Mo. 603.) The court did not err in excluding the lease to one of the grantors of plaintiffs and the record of the forcible detainer suit. The instructions given were a correct exposition of the law. The court did not err in refusing those offered by defendants. (See Donald v. Byrne, 2 Batty, 373 ; Cook v. Nicholas, 2 W. & Serg. 27 ; 13 Mo. 603 ; Buller's N. P. 102 ; 1 Fairf. 256 ; 7 Paine, C. C. 457 ; 9 Wheat. 288 ; 2 S. & R. 527 ; 2 Salk. 423 ; 5 Burr. 2604.)

Scott, Judge, delivered the opinion of the court.

I do not see how the plaintiffs can get along with their first instruction. If they relied on the documentary title, (which I understand to be the deed from Carondelet,) then they did not claim as heirs of Motier, and the case was nothing more than it was when formerly here as reported in 23 Mo. 331. I adhere to the opinion expressed in that case. If the heirs of Motier rely for title on the deed from Carondelet and nothing more, (and the instruction is based on that deed alone,) then twenty years' adverse possession in the defendants and those with whom they claim in privity will bar Carondelet and those claiming under her. Motier's will was not a nullity ; it would pass a title, though a defeasible one. Under the circumstances, I do not see what the deed from Carondelet had to do with the plaintiffs' case. Their right,

as founded on that deed, has been contested, and I have seen nothing since to induce me to depart from the judgment heretofore pronounced on that title. The instruction was wrong in itself. It took for granted that the deed, whose legal existence was in issue before the jury, was a legal and effective instrument. Whether the deed was one or not was a question for the jury, and the court could not, by an instruction, usurp their province and direct them that the existence of an instrument was established when the question was one exclusively for them.

The deed from Carondelet was read and objections were made to it, but there was no objection on the ground that the seal of the corporation was not proved. Under these circumstances, that objection can not be regarded in this court.

By the first section of article eight of the act incorporating Carondelet, the corporation had authority to dispose of its commons. The seal of the corporation being fixed to the deed by the proper officer and signed by him, the presumption is that it was done by proper authority, and the burden of proof is on him who maintains the contrary. (The Public Schools v. Risley, ante p. 415, decided at this term.)

The record does not show that there were any objections made to the reading of the deed. There is an instruction asked directing the jury that the deed was void. But a party should not, by way of instruction, be permitted to take an exception to a deed in evidence, when if the objection had been taken on the trial it might have been obviated.

As the lease was made and the forcible entry and detainer tried during the life of Madame Motier, I do not see what influence these facts could have had on the merits of the case. If these occurrences had taken place after the death of Madame Motier, they would have been evidence against those who were agents in them.

If there was an understanding between Madame Motier and her children that she should remain in possession of the land as doweress or as being entitled to remain there under

the law until her dower was assigned, and that she would not take the land under the will nor claim it otherwise, no writing was necessary to prove this arrangement, and under it the statute of limitations could have no operation against her children, whatever may have been the law as to Carondelet. The statute of frauds would have nothing to do with such arrangement, as it had actually been carried into effect. Such an agreement by parol and if executory could not be enforced, but after it has been made and carried into effect by the parties there is nothing in the statute which prevents its previous existence from being shown by parol, as it was not done with a view to maintain an action on the agreement. Whether or not the defendants had notice of this understanding can not vary their condition. They bought the right, title and interest of Madame Motier, and they can not insist on the statute of limitations for her, when by her conduct she had given assurances to her children that her occupation was not in hostility to their rights. Nor could they force her to accept the devise.

After any interest in the land Madame Motier may have possessed had been sold, of course she could not affect it in the hands of the purchasers by her conduct or declarations. But it was a question for the jury, under all the circumstances, whether there was an understanding with regard to the holding by the widow and the time at which it was made.

Whether by the understanding Madame Motier was to have a life estate only, or the fee simple, was a question of fact for the jury, as the agreement was not in writing. (Halbert v. Halbert, 21 Mo. 275.)

The will was in evidence, and the defendants were at liberty to make such comments upon it and to draw such inferences from its existence as were warranted under the circumstances. When a party has secured the admission of his evidence, he has no right to give it an undue importance by an instruction to the jury as to the use they may make of it. Counsel can make their own comments on the evidence, and the jury will determine their weight. If such instructions

are refused, they can not come into this court and complain
that their refusal was tantamount to telling the jury that the
inference they sought to draw from the evidence was unwar-
ranted.    We do not know that refused instructions are read
in the hearing of the jury, and, if they are, counsel can not
expect, by asking improper instructions, to gain an advan-
tage in this court.    No court in trying a cause would per-
mit the refusal of an instruction to operate to the prejudice
of the party asking it by suffering such refusal to be made
the ground of an unwarrantable inference.    Where the law
fixes the weight or effect of evidence, there is no impropriety
in the courts declaring it to the jury; but when one fact or
piece of evidence is merely used to show the existence of
another fact which is to be found by the jury, the court can
not, by way of instruction, direct the jury that the inference
is warranted.    If it is so, the law presumes the juror more
competent to draw it than the judge.    Our law will not
allow the judge even to comment on the evidence, where the
jury may give what weight they please to the comment.    But
this practice would, by way of imperative instruction, compel
the jury to make an inference or otherwise have their ver-
dict set aside, a consequence which does not necessarily follow
from a refusal on the part of a jury to be governed by the
comments of the court.    In my opinion, the judgment should
be reversed and the cause remanded.

RICHARDSON, Judge.    The plaintiffs claim the land in con-
troversy under two titles; first, as purchasers from Caronde-
let, and secondly, as heirs of Antoine Motier.

The possession of the widow was in privity with that of
her husband, and whether she claimed the absolute estate,
or only a life estate, recognizing the right of her children to
the reversion, is immaterial so far as Carondelet is concern-
ed, for her possession was certainly adverse to Carondelet,
though it may not have been so as to her children.    Her
possession was transferred by act of law to the defendants,
and so a continuous adverse possession for more than twenty

years was established after the period that Carondelet was incorporated and in a condition to sell. (23 Mo. 331.) The second instruction then was erroneous, for the plaintiffs went to the jury with proof in reference to both of the titles under which they claimed, and the facts hypothetically stated in the instruction did not prevent the statute of limitations from running against one of them.

In my opinion there is nothing in the will to prevent the plaintiffs from recovering on their title as heirs of their ancestor. The will is not void, and for many purposes, as against strangers, it may operate as a valid instrument; but, like the deed of an infant, it may be avoided by the children not named nor provided for; and when, as in this case, *all* of them are pretermitted, they may avoid it in an action of ejectment. The course would be different, if some of the heirs were provided for in the will and others not. (Hill v. Martin, ante p. 78.)

I am in favor of reversing the judgment and remanding the cause.