## CUDAHY PACKING CO. v. McBRIDE.
### No. 10914.

Circuit Court of Appeals, Eighth Circuit.
Nov. 23, 1937.

Rehearing Denied Dec. 10, 1937.

Yale C. Holland, of Omaha, Neb. (J. A. C. Kennedy, G. L. DeLacy, E. J. Svobo-

738

da, and R. E. Svoboda, all of Omaha, Neb., on the brief), for appellant.

Wymer Dressler, of Omaha, Neb. (J. J. Friedman and Robert D. Neely, both of Omaha, Neb., on the brief), for appellee.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

The appellant, Cudahy Packing Company, owns and operates a meat packing plant at South Omaha, Neb., in which cattle, hogs, and sheep are slaughtered and prepared for consumption. McBride, the appellee, is a veterinarian in the employment of the Bureau of Animal Industry of the United States Department of Agriculture. On October 11, 1935, appellee was stationed at appellant's plant as an inspector of cattle and meats. While engaged in the performance of his duties as such inspector, he fell from a ladder at the plant receiving injuries for which he brought suit for damages. The case was tried to a jury, and from a judgment upon a verdict in appellee's favor this appeal has been taken.

McBride based his right of recovery upon the allegation that the injuries which he suffered were the direct and proximate result of the negligence of the appellant and its servants. He claimed that his status as an inspector was that of an invitee at the packing plant and that appellant owed him the duty of furnishing him a safe place to work, safe means of ingress and egress to the plant, and of warning of latent dangers.

McBride had worked at this plant about three months in the fall of 1934. He was reassigned to the same plant about October 1, 1935, and had been working there some ten or eleven days at the time of the accident. At that time there were about twenty-five inspectors working under the direction of a Dr. McLaughlin, the supervising inspector at the plant.

A paved alley running east and west separates two of the buildings constituting a part of appellant's plant. At the east end of the alley and on the south side is a building in which the office of the government inspectors is located. At the west end on the north side of the alley is a building on the third floor of which the killing department was located. On the north side of the alley is a retaining wall about 15 feet high at the west end and 17 feet high at the east end. It inclines to the north about 3½ feet.

The door leading to the inspectors' office from the alley was above the level of the alley and was reached by ascending a stairway to a platform in front of the door. From the platform another flight of stairs led to an overhead bridge over the alley extending from the south building to the top of the embankment on the north side thereof. Prior to the day on which the accident occurred inspectors going from the office to the killing floor ascended the steps from the outside platform at the office, crossed over the alley on the bridge, thence west along the top of the embankment to the building housing the killing department where they would arrive at the level of the second floor. They would then ascend to the third floor where the killing department was located.

In making some improvements at the plant, the management had decided to remove the stairway on the outside wall of the inspectors' office and to provide an inside stairway in the building housing the killing department, leading from the pavement level to the second floor of that building. The inside stairway had been completed on the evening of October 10th and was ready for use on the morning of October 11th. McBride knew nothing of the changes and improvements that were being made. On the morning of the 11th he crossed over the bridge in the usual way and went to work about 7 o'clock at the killing department. Soon thereafter he was called back to the office to make some corrections on the reports of his previous day's work. He returned to the office by the same route, crossing over the bridge and down the outside stairway to the platform in front of the office.

Having completed his work at the office about 8 o'clock, McBride started to return to the killing department by the route over the bridge. When he stepped out of the office to the platform from which stairway ascended to the south end of the bridge over the alley, he found workmen removing the steps so that he could not ascend in the usual way. He thereupon descended the steps to the alley. On the opposite side of the alley was an iron ladder leading up to the walk along the top of the embankment. McBride observed a man coming down the ladder. He waited until the man got off the ladder when he started up. At the top of the ladder there was a

wooden railing along the top of the embankment made of 2 x 6 plank laid horizontally upon upright posts. A section of the plank at the top of the ladder about 7 feet long was hinged at one end so that one using the ladder could lift it up and out of the way. When McBride came within reach of the horizontal plank, he took hold of it when it moved and he lost his balance falling to the alley below and receiving the injuries complained of. He held to the plank but, because the nails holding the hinge were rusty and the wood rotten, the plank came off and was carried by McBride in his fall.

The grounds of negligence alleged in the petition were:

First. Failure of appellant to provide a safe means of ingress and egress, that is a safe passage way, between the inspectors' office and the killing department.

Second. That the movable bar or plank in the railing at the top of the ladder was old and rotted and that the hinge and nails were old and rusty, and that because of these conditions it gave way when appellee took hold of it.

Third. That the appellant knew or ought to have known in the exercise of due care the condition of the movable bar and the nails and hinge, and that it failed to warn appellee of that condition.

The errors specified and assigned by appellant complain (1) of the overruling of a motion for a directed verdict, (2) the giving of certain instructions, and (3) the refusal of the court to give certain requested instructions. For the most part the same propositions of law are raised in the motion, in the objections to instructions and in requested instructions.

The first question to be decided is whether there is substantial evidence to support the jury's finding of negligence on the part of appellant. There is evidence to warrant a finding that the railing at the top of the ladder which gave way causing McBride to fall was in a rotten and unsafe condition, and that such condition was not apparent to McBride as he approached it. Whether or not this amounts to negligence as to McBride depends upon his status at the time of the accident. Was he a person to whom the appellant owed a duty to make the railing safe or to give warning of the latent danger? The theory of the District Court was that appellee was an invitee on the premises, and that therefore the appellant owed him the duty to use ordinary care for his safety.

Appellant contends that appellee was a bare licensee and not an invitee, and that appellant owed him no duty other than not wantonly or willfully to injure him. In support of this contention it is claimed that McBride's status was the same as that of a fireman, a policeman, or a city building inspector, when in the performance of a legal duty such an officer enters upon private property. Counsel rely upon Litch v. White, 160 Cal. 497, 117 P. 515; Gibson v. Leonard, 143 Ill. 182, 32 N.E. 182, 17 L.R.A. 588, 36 Am.St.Rep. 376; Drake v. Fenton, 237 Pa. 8, 85 A. 14, Ann.Cas.1914B, 517; Berry v. Boston Elev. R. Co., 188 Mass. 536, 74 N.E. 933; Ross v. Becklenberg et al., 209 Ill.App. 144, and cases of like kind, many of which are collected in a note in 13 A.L.R. at page 637. But these cases are not in point. Firemen and policemen authorized by law to enter upon the premises of property owners in cases of emergency are not invitees. Their business is in no way connected with the business of the owner. They may appear at any time without notice or warning, and the owner may not exclude them from his premises. Government meat inspectors enter a meat packing plant under entirely different circumstances. The Meat Inspection Law (34 Stat. 674, 1260, 21 U.S.C. § 71, ff.; 21 U.S.C.A. § 71 et seq. and notes) prevents the use in interstate or foreign commerce of meats and meat food products which are unwholesome or otherwise unfit for human food. For accomplishing these purposes section 74 of Title 21 U.S.C.A. provides that "the Secretary of Agriculture shall cause to be made, by inspectors appointed for that purpose, an examination and inspection of all meat food products prepared for interstate or foreign commerce in any slaughtering, meat-canning, salting, packing, rendering, or similar establishment, and for the purposes of any examination and inspection said inspectors shall have access at all times, by day or night, * * * to every part of said establishment." Thus it appears that the presence of the inspectors on the premises of a packer shipping its products in interstate commerce is continuous, not in cases of emergency only like that of a policeman or fireman, and that their presence and their duties are essential elements of the owner's business, and in some degree for the owner's benefit. The status of a meat

inspector is analogous to that of a railway mail clerk. Union Pacific R. R. Co. v. Whitney (C.C.A.8) 198 F. 784. The rule approved by this court in Henry W. Cross Co. v. Burns (C.C.A.8) 81 F.(2d) 856, was stated as follows in Middleton v. P. Sanford Ross (C.C.A.5) 213 F. 6, 10: "Invitation of the owner or occupant is implied by law where the person goes on the premises for the benefit, real or supposed, of the owner or occupant, or in a matter of mutual interest, or in the usual course of business, or for the performance of some duty." The trial court properly instructed the jury upon the undisputed facts that the status of McBride was that of an invitee at appellant's packing plant.

■ But appellant contends further that, assuming that McBride was an invitee, his invitation was not broad enough to cover him in the instant circumstances. Reliance is placed upon the proposition that when an invitee exceeds the limits of his invitation by going upon or using a portion of the premises which he could not reasonably be expected to use he becomes a mere licensee. However correct this proposition may be as an abstract rule, it has no application to the instant case. Here the appellant furnished the meat inspectors an office in one building where they performed a part of their duties. The killing department, where another part of their duties was performed, was in another building. The ladder was a substantial fixture leading to the path on the top of the embankment, which path had long been in use by inspectors in traveling from their office to the killing department in the latter building. It cannot be said as a matter of law that an inspector would lose his status as an invitee in going by a direct and obvious route from the office to the killing department or. that he could not reasonably be expected to go by what appeared to be a safe and direct route when he knew of no other way. The purpose of the act (among other things to enforce standards of sanitation throughout the plant) required inspectors to go to all parts of the plant and apparently wherever employees went. There was evidence of blood on the rungs of the ladder, which was presumably carried there on the shoes of men returning from the killing department. Moreover appellee testified that just before he went up the ladder he saw a man coming down it. These circumstances warrant the finding that the ladder was a portion of the prem-ises within the scope of the invitation extended to a meat inspector, and that it was a portion of the premises which the appellant might reasonably expect McBride to use when the steps to the overhead bridge were blocked.

■ In the second place, appellant contends that, when McBride discovered that the stairway which had been used by him was torn down, it was his duty to use reasonable and ordinary care to ascertain whether· a safe and suitable substitute way had been provided before attempting to reach the top of the embankment on the north side of the alley, since he did not know of the existence of the new stairway. Counsel for appellee with equal earnestness insist that it was the duty of appellant, under the circumstances, to give inspectors notice of the new route to be traveled by posting some sign or otherwise.

The question thus raised bears upon the contributory negligence of the plaintiff and was properly submitted to the jury. No exception was taken to such instruction at the trial.

■■ It is next urged that McBride had a choice between two ways to travel from the office to the killing department on the morning of the accident, one a safe way by the new stairway, and the other a dangerous way up the ladder, and that by deliberately selecting the dangerous way he was guilty of such a degree of contributory negligence as to defeat recovery even under the Nebraska law. The defect of this claim is that McBride had no knowledge of the existence of the safe way up the new stairs. So far as his choice was concerned, the new stairway did not exist. The burden was upon appellant to prove contributory negligence and that burden is not met by merely showing that McBride chose what proved to be a dangerous way when a safe way existed. It must also be shown that he had knowledge, or in the exercise of reasonable care should have knowledge, of the safe way and chose the unsafe way with the danger in view. Young v. Baldwin (C.C.A.8) 84 F.(2d) 841, 843. The only attempt to meet this situation on the part of the appellant is the claim that Dr. McLaughlin, the supervising inspector, knew that the new stairway was completed and that he should have told McBride. Obviously this claim is without merit. McBride was not an agent of Dr. McLaughlin, and the doctrine of imputed negligence does not apply. Miller v. Union Pacific R. Co.,

290 U.S. 227, 54 S.Ct. 172, 78 L.Ed. 285; Young v. Baldwin, supra.

In this connection it is claimed that McBride assumed the risk involved in using the ladder and is therefore barred from recovery. But, since he was not an employee of the appellant, the doctrine of assumed risk has no application. Cudahy Packing Co. v. Luyben (C.C.A.8) 9 F.2d 32, 35.

A further criticism of the trial of the case is referred to in appellant's assignments of error filed with the petition for appeal. Assignment No. IX alleges that "The Court erred in instructing the jury in effect that there was evidence from which it would be entitled to find that plaintiff was negligently misled into the reasonable belief that the ladder was an appropriate means of getting to and from his work on the killing floor." Assignment No. X is of like import. Neither assignment sets out that portion of the charge referred to. In this respect the assignment disregards our rule No. 23, which provides that no appeal shall be allowed until an assignment of errors has been filed in conformity with the rule; and it is provided that "When the error alleged is to the charge of the court, the assignment of errors shall set out the part referred to totidem verbis. * * *" The record discloses that an order was procured extending the time for filing the bill of exceptions and "to file additional and supplemental Assignments within the time as extended, * * *" but that such order was not taken advantage of to add to nor supplement the original assignment.

Further, rule 14, section 2, paragraph 4, provides that the appellant's brief shall contain "a separate and particular statement of each assignment of error intended to be urged", and that "When such error is as to the charge of the court, the statement shall quote the portion of the charge * * * which is claimed as error, giving pages of the printed record where it occurs." This rule was not complied with.

Under repeated rulings of this court this assignment of error can not be considered on appeal. See Victory Sparkler & Specialty Co. v. Latimer, 53 F.2d 3 (C.C.A.8); Washburn v. Douthit, 73 F.2d 23 (C.C.A.8); Fidelity & Deposit Co. v. Bates, 76 F.2d 160 (C.C.A.8); Miller-Crenshaw Co. v. Colorado Mill & Elevator Co., 84 F.2d 930 (C.C.A.8); City of Lincoln v. Sun Vapor Co., 59 F. 756 (C.C.A.8); Haldane v. United States, 69 F. 819 (C.C.A.8); Hard & Rand v. Biston Coffee Co., 41 F.2d 625 (C.C.A.8).

For the reasons stated the judgment appealed from is affirmed.