James Storment, Plaintiff-Appellant, v. Swift & Company, Defendant-Appellee.

### Term No. 54–O–19.

Fourth District.

February 28, 1955.

Rehearing denied April 5, 1955.

Released for publication April 21, 1955.

Greensfelder, Hemker & Wiese, of St. Louis, Missouri, and Farthing & Farthing, of Belleville, Illinois, for appellant.

Pope & Driemeyer, of East St. Louis, Illinois, for appellee.

MR. PRESIDING JUSTICE CULBERTSON delivered the opinion of the court.

This cause now before the court arises from an action instituted by James Storment (hereinafter called plaintiff) to recover damages against Swift & Company (hereinafter called defendant).

Plaintiff was a federal meat inspector who contended that defendant company failed to maintain its premises in a reasonably safe condition, and failed to provide safe methods and instrumentalities so that plaintiff had a reasonably safe place to work and perform his inspection duties. It was alleged, specifically, that defendant was negligent in permitting the working sur-

face of the inspection platform upon which plaintiff worked to be and remain both "slick, slippery, and smooth, and in an unsafe and dangerous condition," and that defendant allowed quantities of fat, oil, grease, hog trimmings, and water to accumulate and remain on the platform, thereby rendering the platform highly slippery and unsafe and dangerous, and also that defendant failed to properly space the hogs along the chain conveyor sufficiently apart to permit plaintiff to rotate each hog freely without its being obstructed by the adjacent hogs.

Defendant, in its answer, alleged that plaintiff was guilty of contributory negligence in that he could at any time before or at the time of his alleged injury have required defendant company to (1) turn, space, or move any animal submitted to him for inspection; (2) change the platform or conveyor chain as he required for efficient conduct of his inspection and protection of his own safety; and (3) allow or remove any quantities of fat, oil, grease, hog trimmings, or water as seemed expedient to him for efficient conduct of his inspection or protection of his safety.

The evidence disclosed that the defendant company was engaged in the slaughtering of livestock at its plant and that plaintiff was engaged in his duties of examining hogs in accordance with the provisions of the federal meat inspection law. Plaintiff was required to work on a raised platform eighteen inches wide, alongside a concrete trough or gutter thirty inches wide, beneath a rail from which the hog carcasses were suspended, head downward. When the carcasses reached plaintiff's station they had been split, and it was his duty to inspect the carcasses for bruises, abscesses, and evidence of disease. If he discovered any such bruises or abscesses he directed employees of defendant company to remove them. He did not himself carry a knife or other tool.

420

The evidence showed that at about 9:00 o'clock a. m. on July 19, 1950, plaintiff had called for someone to clean the fat off of the inspection platform. Some of the pieces of meat and fat had fallen on the platform by reason of the fact that large sows were being processed and there was not room for the trimmings to fall through the thirty-inch space between the platforms, into the gutters below. Plaintiff had also objected that he was having trouble turning the hogs to inspect them and had asked for a change in the spacing interval in the hogs on the conveyor. The request for clean-up of the platform was made several times and plaintiff had actually stopped the conveyor chain but was told by the defendant company foreman that he would clean up the platform and that the chain shouldn't be stopped.

About 9:00 o'clock Storment was inspecting a group of three heavy sows. He had finished with two and was in the act of pushing the third sow around so as to inspect the back side. While exerting the extra effort required to rotate the hog because the forelegs were interlocked with the feet of the adjoining hog, plaintiff's feet slipped on the greasy, slippery fat, throwing him forward. He grabbed the hog and held on and was dragged along to the end of the platform. At the time he slipped he was about two feet from the end of the platform. He called to defendant company's employees to stop the chain and to call the foreman because he, the plaintiff, was hurt.

Plaintiff had immediately felt a sharp pain, was sick and nauseated, and had pain in his groin and across both sides of his lower abdomen. He was examined by a doctor the same afternoon, who found a hernia on the right side, and an enlarged ring on the left side which would be a potential hernia. He was hospitalized and had surgical treatment on his hernias. Plaintiff still continues to do work of inspecting livestock on the hoof, which requires no physical exertion. He

still has pain on his left side, especially when standing on his feet. The issues were submitted to a jury and the jury returned a verdict of $15,000 in plaintiff's favor. A motion for judgment notwithstanding the verdict, and in the alternative, for a new trial, was filed by the defendant and granted by the trial court.

It is the contention of plaintiff on appeal in this court that the trial court erred in entering judgment notwithstanding the verdict. A judgment notwithstanding the verdict may be entered only when under all the evidence in the case it would have been the duty of the court to direct a verdict without submitting the case to the jury, and the single question before the court under such circumstances is, whether there is in the record any evidence which standing alone and taken with all legitimate inferences most favorable to the party resisting the motion would tend to prove the material elements of the case, and if the evidence makes out a prima facie case sufficient in itself to go to the jury, the motion is required to be denied and plaintiff is entitled to the benefit of the evidence favorable to him, including evidence introduced by defendant (1953 Illinois Revised Statutes, chapter 110, section 259.22 [Jones Ill. Stats. Ann. 105.22]; Warren v. Patton, 2 Ill.App.2d 173; Lindroth v. Walgreen Co., 407 Ill. 121; Bonnier v. Chicago, B. & Q. R. Co., 2 Ill.App.2d 606). It is apparent that the defendant company had a duty to maintain its premises in a reasonably safe condition, and conduct its operations in a reasonably safe manner for the performance of the work of plaintiff, since his presence and duties require him to be on the premises (Cudahy Packing Co. v. Luyben, 9 F.2d 32, 34; Cudahy Packing Co. v. McBride, 92 F.2d 737, 739; Swift & Co. v. Schuster, 192 F.2d 615).

Under the facts before us the question of defendant's negligence was a jury question and contributory negligence, if any, being a matter with respect to

which reasonable minds might differ, under the facts, was also clearly a question for the jury. Knowledge of the working conditions which might involve some risk did not, as a matter of law, under the facts, constitute contributory negligence (Swift & Co. v. Schuster, supra, at 616).

The operations at the defendant company plant where plaintiff received his injuries involved the conveyance along an overhead rail of slaughtered hog carcasses past the inspection post of plaintiff. The hogs were suspended from a metal gambrel inserted under the tendons of their hind legs and attached to a swivel to allow easy turning during inspection. Under the facts, the evidence indicated that defendant company spaced the hogs so close together that they became entangled and could not be turned freely, and carried on butchering and trimming operations so that fat and meat scraps fell on the surface of the inspection platform, which defendant failed to keep clean. Plaintiff, while engrossed in inspection and in exerting himself to turn a large sow which was entangled with another, slipped on a piece of fat allowed to accumulate on the platform, and suffered the bilateral hernia referred to. Under the record, there was clearly a question of fact as to the negligence of defendant, and as to the contributory negligence of plaintiff, and these were questions for the jury to determine.

It is contended in this court by defendant company that in accordance with the order of the court below, if the judgment in favor of defendant company be set aside on appeal, defendant's motion for new trial be allowed. It is further stated that such new trial order is proper on two grounds, (1) that the verdict was against the manifest weight of the evidence, and (2) because the verdict was excessive.

We have approved the principle that ordinarily the decisions of a trial court in granting a new trial

423

would not be reversed, except for a clear abuse of discretion, in the case of Warren v. Patton, supra, on the principle that the court below having seen and heard the witnesses was in a better position to weigh the evidence than a court in reviewing the evidence in the record on appeal.

In this case the trial judge has stated, as one reason for granting a new trial, that he deemed the verdict excessive. On this subject, the evidence indicates that plaintiff's only injury was a hernia, such as he had suffered before and had repaired. Due to this latest injury he lost about $560 in wages and incurred about $50 in expenses, but his earning power was not seriously impaired. In fact, he returned to work as an inspector of livestock on the hoof, at higher wages than before the occurrence. Under these conditions there was sufficient basis for the trial court's ruling to preclude this court from declaring the allowance of the motion for new trial was an abuse of discretion.

Accordingly the judgment notwithstanding the verdict is reversed, the alternative order granting a new trial is affirmed and the cause is remanded.

Reversed in part, affirmed in part and remanded.

BARDENS and SCHEINEMAN, JJ., concur.