Milton J. KNIGHT, Respondent,

v.

SWIFT AND COMPANY, a Corporation, Appellant.

No. 47208.

Supreme Court of Missouri,

Division No. 2.

Sept. 12, 1960.

Motion for Rehearing or to Transfer to Court en Banc Denied Oct. 10, 1960.

Alexander & Robertson, L. A. Robertson, St. Louis, for appellant.

Robert Kratky, Everett J. Hullverson, Hullverson, Richardson & Hullverson, St. Louis, Wm. L. Mason, Jr., St. Louis, of counsel, for respondent.

STOCKARD, Commissioner.

Appellant has appealed from a judgment entered pursuant to jury verdict in the amount of $10,000 for personal injuries resulting from a fall by respondent in its packing plant in National City, Illinois.

Respondent was what is known as a "federal meat inspector" employed by the United States Department of Agriculture and was assigned to inspect meat at appellant's plant. On January 21, 1957, the day respondent was injured, he was working on the third floor of appellant's plant in East St. Louis in what he described as "the pork offal department." In the performance of his work he was required to go from one floor to another, and while walking from the third to the second floor he slipped and fell on the steps. The stairway was of concrete construction with a steel plate on each step imbedded in the concrete. It was about four feet wide and contained about twenty-five steps. Respondent stated that the metal plates formerly had "diamond crevices," but that they had been worn "shiny and smooth" until "there was no traction." He further stated that he had been "around Swift & Company about * * sixteen years and the same condition always existed." On the morning he fell, respondent wore "special shoes made especially for packing house work" which had "neolite soles, interwoven with cord" to prevent slipping. The steps were "clean" and "the light was sufficient to see the steps at all times." In describing the circumstances of his fall respondent said that he looked at the step, and as far as he could see it was all right, "outside of just having that worn plate on it." He took hold of the rail and stepped on the first step, and when he stepped on the second step both feet flew out from under him and he "tumbled" to the bottom of the stairway.

As the result of the fall respondent was "sore and stoved up and bruised up." The

"first" thing he realized was that "there was a knife like sticking in my groin." He worked until that afternoon and then went home and "soaked" himself in hot water to relieve some of the soreness. He continued to have a "dull ache and soreness" until he went to a doctor about three weeks later. He developed a right inguinal hernia which required surgery but which left no permanent disability. He also complained of an injury to the lower portion of his back, and he testified that his back was still sore and that it gave him "a lot of trouble." For the hernia operation he was hospitalized for five days and was absent from work for seven weeks.

Respondent submitted his case to the jury on the theory that the steps "were dangerous and not reasonably safe and [were] likely to cause persons using them to slip thereon;" that such conditions, dangers and likelihood of slipping were not fully known to him and were not so apparent that he might reasonably have been expected by defendant to discover them and be able to look out for himself; and that such conditions and dangers were either known by appellant or by the exercise of ordinary care could have been discovered by it in sufficient time thereafter and before respondent fell to have made the steps safe.

Appellant first contends that the trial court erred in overruling its motion for a directed verdict because (a) respondent "was a business visitor, licensee, or invitee" and the only duty it owed him was to keep the premises safe from "hidden dangers, traps, snares, pitfalls and the like," and "all conditions" were as obvious and well known to respondent as to appellant; and (b) appellant's familiarity with and frequent use of the steps demonstrates that he knew their condition and voluntarily undertook to use them, and no warning could have told him more than he knew or saw and he thereby was guilty of contributory negligence or assumed the risk involved.

Appellant cites and relies primarily on six Missouri cases, a quotation from 65

C.J.S. Negligence § 50, and the Restatement of the Law, Torts § 340, pertaining to the duty of the possessor of real estate to invitees. It also cites, as the seventh and eighth cases relied on, Geraghty v. Burr Oak Lanes, Inc., 5 Ill.2d 153, 125 N.E.2d 47, and Altepeter v. Virgil State Bank, 345 Ill. App. 585, 104 N.E.2d 334. None of these cases pertains to the status of a federal meat inspector when engaged in his work on the premises of a packing company.

Respondent testified affirmatively that he was fully aware of the condition of the steps, that the stairway was clean and well lighted and that he saw the condition immediately before and at the time he attempted to use the stairway. Therefore, if the general rules concerning the duty of the possessor of the premises to an invitee apply it is doubtful whether respondent made a submissible case. See particularly the discussion concerning these general rules in Ostresh v. Illinois Terminal R. Co., Mo. Sup., 313 S.W.2d 19, and Harbourn v. Katz Drug Co., Mo.Sup., 318 S.W.2d 226 (both arising under Missouri law), and the limited discussion in the two Illinois cases cited and relied on by appellant. However, this cause of action arose in Illinois, and the substantive law of that state is determinative of the issue as to whether, as a matter of law, respondent made a submissible case.

In Storment v. Swift & Co., 5 Ill.App.2d 417, 125 N.E.2d 697, 699, the plaintiff was a federal meat inspector working in a processing plant of Swift & Co. located in Illinois. The plaintiff was required to work on a raised platform eighteen inches wide alongside a concrete trough. On the day of the injury some large hog carcasses were being inspected, and pieces of meat and fat had fallen on the platform. Plaintiff was fully aware of this condition. While he was attempting to rotate a hog to inspect it, his feet slipped on the fat and he fell and was injured. In his suit for damages the trial court entered judgment for defendant notwithstanding the verdict. On

appeal it was held: "It is apparent that the defendant Company had a duty to maintain its premises in a reasonably safe condition, and conduct its operations in a reasonably safe manner for the performance of the work of plaintiff, since his presence and duties require him to be on the premises, * * *." The Illinois court did not rule whether or not the federal meat inspector was an invitee, or that it was or was not applying the rules pertaining to that status. In making the above-quoted ruling, the Illinois court cited and relied on Cudahy Packing Co. v. Luyben, 8 Cir., 9 F.2d 32; Cudahy Packing Co. v. McBride, 8 Cir., 92 F.2d 737; and Swift & Co. v. Schuster, 10 Cir., 192 F.2d 615, which applied the law of Nebraska and Utah.

■■■ Appellant's only answer to the application in the pending case of the rule of law announced in the Storment case is that "the Illinois court erred in creating and thrusting upon the defendant an additional duty that amounted to holding that the defendant must provide a safe place in which the plaintiff could work, a duty normally reserved for one's employees," and that it erroneously relied on three Federal cases which were "distinguishable on their facts." Be that as it may, appellant cites to us no Illinois case overruling or even criticizing the Storment case, and our authority under the circumstances extends only to the application of the law of Illinois to the facts before us. We cannot ignore the latest expression on the subject by the appellate courts of Illinois, and we certainly cannot overrule the case even if we agreed with appellant that it was wrong. The jury could find in this case that the duties of respondent required him to be on the premises of appellant, and that the condition of the stairway constituted an unsafe or dangerous condition. Under the law of Illinois, appellant had a greater duty to respondent, as a federal meat inspector, than only to keep the premises safe from "hidden dangers, traps, snares, pitfalls and the like," as appellant contends. This contention is ruled against appellant.

■■ In the Storment case the plaintiff was fully aware of the conditions which brought about his injury, but it was there held: "Under the facts before us the question of defendant's negligence was a jury question and contributory negligence, if any, being a matter with respect to which reasonable minds might differ, under the facts, was also clearly a question for the jury. Knowledge of the working conditions which might involve some risk did not, as a matter of law, under the facts, constitute contributory negligence." This rule is applicable to the contention of appellant that respondent's use of the steps when he had knowledge of their condition constituted contributory negligence as a matter of law. We note also the following comment in 65 C.J.S. Negligence § 121, at page 730. "Expressions are found in a number of decisions to the effect that one who voluntarily exposes himself or his property to a known and appreciated danger is guilty of negligence; but while an important factor to be considered in all cases, it is generally held that the fact that one knew and appreciated, or in the exercise or ordinary care should have known and appreciated the danger, and voluntarily encountered it or failed to avoid it does not necessarily show negligence. The weight of authority supports the qualification that one is not negligent in voluntarily exposing himself to such danger, if, under the same or similar circumstances, an ordinarily prudent person would have incurred the risk which such conduct involved. Thus one may not be guilty of negligence in exposing himself or his property to known and appreciated danger where there is some reason of necessity or propriety to justify him in so doing, or where by the exercise of care proportionate to the danger one might reasonably expect to avoid the danger, or where no other course is open, or where reasonably prudent men might differ as to the propriety of encountering it." Whether or not, under the circumstances, respondent was guilty of negligence in using the stairway when he knew

of their condition was a question for the jury.

■ Appellant cites no Illinois case in support of its contention that the motion for directed verdict should have been sustained because respondent "assumed the risk." Appellant contends that respondent was an invitee, but under Illinois law the doctrine of assumption of risk is not available to one in control of the premises when the plaintiff is an invitee. Holsman v. Darling State Street Corporation, 6 Ill. App.2d 517, 128 N.E.2d 581. Appellant did not submit the issue of assumption of risk. Under the circumstances the doctrine would not, as a matter of law, have precluded respondent's right to recover if the rule announced in the Storment case be followed or if respondent be considered to be an invitee.

Appellant next contends that its motion for a directed verdict should have been sustained because respondent did not allege in his petition that he was in the exercise of due care for his own safety.

At the time the motion for a directed verdict was made the petition did not contain such an averment, and the transcript before us does not contain an amendment to the petition or any statement by the court or the reporter that such an amendment was offered or made. However, in its brief to this court appellant states that "the court erred in permitting plaintiff to file a memorandum attempting to insert such an allegation in his petition," and the transcript contains a statement by counsel for appellant made at the conclusion of all the evidence that he is "objecting and excepting to the filing of a memorandum asking leave to amend the amended petition and inserting in paragraph 2(a) reading as follows: '(A) At all times herein mentioned plaintiff exercised ordinary care for his own safety.'" No ruling by the trial judge on the objection is indicated.

■ There is no question but that the evidence supported such an allegation if

made, and the issue of respondent's exercise of due care was submitted to the jury by respondent's verdict-directing instruction. Section 509.500 RSMo 1949, V.A.M.S., provides that when issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise the issues may be made upon the motion of any party at any time, even after judgment, "but failure so to amend does not affect the result of the trial of these issues." Under the circumstances of this case no prejudicial error to appellant resulted, but this situation is not to be confused with that where the issue of due care on the part of the plaintiff in an action arising under the law of Illinois is not submitted by proper instructions to the jury. See O'Leary v. Illinois Terminal R. Co., Mo.Sup., 299 S.W.2d 873.

■ Appellant next charges error in respondent's verdict-directing instruction. After hypothesizing the factual situation previously outlined and that "such steps were dangerous and not reasonably safe and likely to cause persons using them to slip thereon," the instruction then submitted that "such conditions, dangers and likelihood of slipping were not fully known to Mr. Knight and were not so apparent that he might reasonably have been expected by defendant to discover them and be fully able to look out for himself, * *." Appellant cites and relies on the ruling in Dixon v. General Grocery Co., Mo.Sup., 293 S.W.2d 415, wherein it was stated that the standard of conduct exacted by law is an external and objective standard and not the judgment of the individual actor, be it good or bad, and should be the same for all under like circumstances. Here the jury could have found that in the exercise of ordinary care respondent knew or should have known of the dangers and likelihood of slipping and was therefore contributorily negligent, but that because re-

spondent did not in fact know of such dangers he was entitled to recover. When so considered the instruction is subject to the objection made in the Dixon case. However, this instruction contains two other requirements not in the instruction condemned in the Dixon case. In addition to the requirement that the jury should find that respondent did not know of the dangers, the jury was required to find that in descending the steps respondent was exercising ordinary care for his own safety, and that the dangers and likelihood of slipping were not so apparent that appellant might reasonably have expected respondent to discover them.

It is obvious that the instruction is not carefully worded, and tends to be somewhat confusing. However, it does require a finding that "in descending the steps" respondent was exercising ordinary care for his own safety, that in the exercise of that care he did not know of the dangers and likelihood of slipping, and that the dangers and likelihood of slipping was not so apparent that appellant should have expected respondent to discover them while exercising ordinary care for his own safety. The instruction is ineptly worded, but the language of the instruction when considered in its entirety is not prejudicially erroneous under the rule announced in Dixon v. General Grocery Co., supra.

■■ Appellant also contends the instruction to be erroneous because the "requirement of a finding that the steps in question were 'damp' and 'had no welded beads thereon' goes beyond the pleadings and evidence, is a comment on the evidence and is argumentative."

The contention that the stairs were damp was pleaded and there was substantial evidence to that effect. Respondent pleaded that appellant negligently failed "to roughen the treads of said steps or to place thereon non-skid treads." There was evidence concerning the absence of "corrugated beadings," and that such "beads" were a nonskid device. The language of

the instruction, in its material parts, was as follows: "If you further find from the evidence that * * * such steps were worn, slick, smooth, damp, and had no welded metal bead thereon, * * * and that by reason of such condition of said steps * * * such steps were dangerous and not reasonably safe * * *." Appellant argues that the issue was only "whether or not the steps were dangerous because of being smooth and slick." However, if respondent desired to impose the additional requirement that before the jury could find the steps to be dangerous and not reasonably safe it also had to find that they were damp and had no welded metal beads it was not to appellant's detriment. The cases cited by appellant pertain to the impropriety of the court directing the jury that a certain inference is warranted from hypothesized facts. See for example, Chouquette v. Barada, 28 Mo. 491; Kennedy v. Phillips, 319 Mo. 573, 5 S.W.2d 33.

The last contention of appellant is that "The verdict is so excessive as to require a new trial." In support thereof it is asserted that there was no permanent injury, the medical expenses were only $150, and it is a matter of doubt whether respondent's condition was the result of this accident.

■■ The substance of appellant's point is that the verdict is so excessive that it demonstrates bias and prejudice or misconduct. If that is true the error cannot properly be corrected by a remittitur. Dye v. St. Louis-San Francisco Ry. Co., 361 Mo. 331, 234 S.W.2d 532. No request for or argument in support of a remittitur is made. No mention is made of what would be considered a proper remittitur. Appellant cites only one Missouri case, Lang v. St. Louis Public Service Co., Mo.App., 204 S.W.2d 504, wherein it was held that the trial court did not abuse its discretion in granting a new trial on the ground that a verdict in the amount of $7,500 for a direct inguinal hernia was excessive. In respondent's brief it was pointed out that appellant made no request for or argument in

favor of a remittitur, and it was then stated that "under the assumption * * * that defendant [appellant] has abandoned any point to the effect that the verdict was (merely) excessive," the only point respondent would brief was whether appellant was entitled to a new trial because of the size of the verdict. Appellant filed a reply brief and made no mention therein whatever of the contention of abandonment or of the issue of excessiveness of the verdict. Under the circumstances we deem it appropriate to limit our review only to whether the verdict is so excessive to require a new trial

 The question of whether the verdict was so excessive to require a new trial was presented to the trial court who was entitled to weigh the evidence but who ruled against appellant. The record does not disclose any occurrence during the trial from which we would be justified in finding misconduct or in concluding that the jury was prejudiced. We have ruled frequently and consistently that the amount of the verdict does not necessarily in and of itself indicate passion and prejudice. Abernathy v. St. Louis-San Francisco Ry. Co., Mo.Sup., 237 S.W.2d 161; Keely v. Arkansas Motor Freight Lines, Mo.Sup., 278 S.W.2d 765; Osburn v. Kansas City Southern Ry. Co., 360 Mo. 813, 230 S.W.2d 856. Appellant argues that "if both the hernia and the complaints of pain in the back be eliminated from consideration * * * then there is little left to consider—no expenses, no lost wages, only bruises and soreness." We do not agree that the elements of damages referred to may properly be eliminated. While there admittedly was a dispute in the testimony, there was sufficient evidence from which the jury was authorized to find that the hernia, which required surgery, and the condition of respondent's back, as revealed by X-ray pictures and which resulted in pain to respondent, were caused or aggravated by the fall. We consider the verdict to be liberal, but under the circumstances it does not, by reason of its amount, establish that appellant is entitled to a new

trial. We defer to the trial court that the verdict of the jury did not result from bias or prejudice.

The judgment is affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.