JOHN F. DEVINE, Admr., Appellee, *vs.* THE NATIONAL SAFE DEPOSIT COMPANY, Appellant.

*Opinion filed June 16, 1909.*

1. NEGLIGENCE—*what does not, as a matter of law, show lack of due care.* In an action by an administrator for damages for the death of his decedent, who fell down an unguarded elevator shaft on the defendant's premises when moving goods for the tenant by whom he was employed, the mere fact that the deceased made use of the platform where the shaft opening was, with full knowledge of the danger, does not, as a matter of law, show that he was not in the exercise of ordinary care.

2. SAME—*what is merely an attempt to apply doctrine of assumed risk.* In an action for damages for the wrongful death of a person not a servant of the defendant but rightfully on defendant's premises working for the defendant's tenant, the contention that there can be no recovery because the deceased "knew and appreciated the danger and voluntarily continued his work without objection" is merely an attempt to apply the doctrine of assumed risk to the case.

240 — 24

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. HOMER ABBOTT, Judge, presiding.

This is an appeal by the National Safe Deposit Company from a judgment of the Appellate Court for the First District affirming a judgment for the sum of $6000 recovered by James Reddick, administrator of the estate of William Thomas Daly, deceased, against the appellant, in the superior court of Cook county, in an action on the case for damages on account of the death of said Daly, occasioned, as is claimed, by the negligence of the appellant. While the cause was pending in the Appellate Court the death of James Reddick was suggested, and John F. Devine having been appointed administrator *de bonis non* of said estate, was substituted as appellee.

The declaration, which contained but one count, charged that appellant, on May 9, 1905, was the owner of a large office building in the city of Chicago which was occupied by its tenants for hire; that in the rear and outside of said building it had provided a platform which connected with a certain doorway leading into said building for the use of its tenants in conveying their goods to and from said building; that in said platform, close to said doorway, appellant had a certain large freight elevator shaft descending from that platform to a depth of eighteen feet, in which it operated an elevator from the surface of the platform to the basement of the building, and that the deceased, while in the employ of one of the tenants of appellant, engaged in conveying the goods of said tenant into said building over said platform, when in the exercise of ordinary care for his own safety, by reason of the negligent failure of appellant to guard the mouth of the elevator shaft at a time when the elevator was at the bottom of the shaft, fell into said shaft and was killed. Appellant interposed the general issue. At

the close of the evidence offered by the plaintiff the defendant's motion for a peremptory instruction was denied. No evidence was offered on the part of defendant.

At the time of the accident appellant was the owner of a large office building in the city of Chicago, known as the First National Bank building, which was occupied by a large number of tenants engaged in various kinds of business. At the rear and in the north wall of the building, on the first floor, there was a door about nine feet in width. Inside this door a corridor led south in the building to a freight elevator used by the tenants for the purpose of carrying freight to and from the different floors of the building. Immediately outside of this door, in an alleyway, there was a platform, which had been constructed by appellant for the use of its tenants, and those having business with them, in taking goods in and out of the building. The surface of the platform was smooth and level and was made of cement and concrete. It was nearly eleven feet in width from north to south and was about twenty-four feet in length from east to west. It occupied the entire west end of the alleyway. It was surrounded on the south, west and north sides by walls and extended east of the door about two and one-half feet, west of the door about twelve feet, and was raised two feet above the surface of the ground. There was no cover over it. In this platform, three feet and two inches west of the west side of the door, was the east side of the opening of the elevator shaft. That opening was four feet and five inches wide east and west and six feet and three inches long north and south. In that shaft appellant operated an elevator from the surface of the platform to the floor of the boiler room, fourteen feet below. When the elevator was at the top of this shaft it formed a part of the floor of the platform. On the platform there was a double trap door to this opening, which could be closed when the elevator was below the surface of the platform. Appellant had also provided a wooden bar to

be used as a guard-rail on the east side of the opening when the elevator was down and the trap door was open. When this bar was in place it was about two and one-half feet above the surface of the platform, with its south end resting in a place provided for it on the wall of the building and with its north end resting on a garbage box just north of the opening. When the elevator was lowered into the basement and the trap doors were not closed, the opening of the elevator shaft was plainly visible to anyone standing on the platform.

The Amberg File and Index Company was a concern engaged in the manufacture of letter files, cabinets and other office devices and operated a factory in another part of the city. For the purpose of displaying its goods more conveniently it had rented a room from appellant and on the day of the accident was engaged in moving goods into the building. The deceased was in its employ. On that day he and two other employees of the Amberg company drove from the factory with a load of cabinets. When they had driven into the alleyway they found a wagon backed up to the east end of the platform, from which men were unloading a safe. This work required nearly an hour, and Daly and his companions were obliged to wait during that time, a part of which was spent by them in the alleyway east of the platform, a part on the platform and a part in the corridor of the building. When the safe had been unloaded, the men who were moving it went inside the building with it and left their team and wagon standing at the platform. Sisson, one of Daly's companions, directed Axleman, the teamster in charge of the team of the Amberg company, to get on the Amberg wagon and he (Sisson) would lead the other team away so Axleman could back the Amberg wagon up to the platform. At that time there was a board, twelve or fourteen feet long, lying alongside the wagon from which the safe had been unloaded, with one end on the platform

and the other on the ground. When Sisson started to lead the team away he walked down this plank from the platform. As he did so, Daly, who was then standing on the platform near the east edge, said, "I will pull in the plank." Daly was not again heard to make a sound. He was not again seen alive. When Sisson led away the team hitched to the wagon which had contained the safe the Amberg wagon was backed up to the platform. The board had then been taken away, probably by Daly, but the proof does not show what became of it. Sisson and Axleman then noticed for the first time that Daly was no longer in sight. After unloading the cabinets they found him dead at the bottom of the elevator shaft, with his head crushed. He had evidently fallen down the shaft. This all took place during the forenoon.

At the time the accident occurred, and during the time the Amberg men were compelled to wait while the safe was being unloaded, the elevator was down in the basement, the trap door was open and the bar was not in its place across the opening of the elevator shaft. The proof showed that appellant was chargeable with knowledge of this condition of affairs, and that Daly must have observed the situation while he and his fellows were waiting to use the platform. On the day preceding the accident Daly and the two men who were with him on the day of his death brought a load of cabinets from the factory to the building. At that time also they had to wait at the platform, and while there they observed the opening into the elevator shaft, the trap door being open and the bar not in its place. At that time one of Daly's companions remarked to him that "it would be a fine place for a fellow to fall down and break his neck," and Daly replied, "Yes, it would be."

It is contended by appellant that the court erred in denying its motion for a peremptory instruction.

FRANK M. COX, and R. J. FELLINGHAM, for appellant.

JAMES C. MCSHANE, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

There was no eye-witness to the accident. Appellant was guilty of negligence as charged. The evidence raises a presumption that Daly did not commit suicide. There was also proof from which the jury might infer that the deceased was in the exercise of due care for his personal safety at the time of the accident, unless, as contended by appellant, that inference is forbidden because Daly knew of the open and unguarded shaft and knew of the danger connected therewith. This contention of appellant cannot be sustained. It cannot be said, as a matter of law, that Daly was not in the exercise of due care for his personal safety when he received the injuries, merely because he made use of the platform with full and complete knowledge of the danger. *City of Streator* v. *Chrisman,* 182 Ill. 215, and cases there cited; *Palmer* v. *Dearing,* 93 N. Y. 7; *Dewire* v. *Bailey,* 131 Mass. 169; *Hopkinson* v. *Knapp,* 92 Iowa, 328; 7 Am. & Eng. Ency. of Law, 332.

Appellant concedes that the doctrine of assumed risk can have no application here, but insists that the fact that the deceased "knew and appreciated the danger and voluntarily continued his work without objection" bars a recovery under the rule "that he who consents cannot afterward complain." Appellant's argument is, in this regard, merely an attempt to apply the doctrine of assumed risk and to give to it another name.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*