## CUDAHY PACKING CO. v. LUYBEN.

(Circuit Court of Appeals, Eighth Circuit. November 13, 1925. Rehearing Denied January 25, 1926.)

No. 6932.

1. Negligence ☞44—Ownership of runway, causing switchman's injury, held immaterial.

In action for injuries to switchman, alleged to have been struck and knocked from top of car by car-icing runway maintained by defendant packing company in shed tendered for use by switching crews, it was immaterial in whom technical legal ownership of runway was lodged.

2. Negligence ☞28—Maintenance of place not reasonably safe for activities intended is negligence.

It is negligence for any one, whether stranger, invitor, or employer, with knowledge of what is to be done, to maintain a place not reasonably safe for activities and operations contemplated.

3. Negligence ☞136(25)—Cause of switchman's fall from car held for jury.

In action for injuries to switchman, alleged to have been knocked from top of car by packing company's car-icing runway, whether plaintiff was struck by runway, or fell for some other reason, held for jury.

4. Negligence ☞136(22)—Negligence in not lighting runway held for jury.

In action for injuries to switchman, alleged to have been knocked from top of car by car-icing runway, whether inadequate lighting contributed, with obvious menace of runway, to plaintiff's injury, held under evidence for jury.

5. Evidence ☞17—Courts will take judicial notice that daylight is waning at particular time and place.

Courts will take judicial notice that on April 11th, at 6:30 p. m., daylight is waning in South Omaha, Neb.

6. Negligence ☞105—Assumption of risk not defense, except where relation of employer and employee exists.

The defense of assumption of risk is not available, except where relation of employer and employee exists.

7. Negligence ☞136(2)—Assumption of risk, if available, held for jury.

Whether switchman assumed risk of being struck and knocked from top of car by car-icing runway held, under evidence, question for jury, regardless of whether or not plaintiff was employee of defendant, so as to make such defense available.

8. Appeal and error ☞1064(4)—Inadvertent use of word "gross," in applying comparative negligence statute, held not ground for reversal.

Court's inadvertent use of the word "gross," in applying Nebraska comparative negligence statute, held not ground for reversal, in absence of exception, particularly where statute itself was read, and evidence of contributory negligence was negligible.

9. Appeal and error ☞201(2)—Alleged improper comment of court held not reviewable, in absence of exception.

Alleged improper comment of court on severity of plaintiff's injuries, and latitude in assessment of damages, held not reviewable, in absence of exception thereto.

10. Trial ☞273—Exceptions to instructions must be taken at close of submission of case to jury.

Exceptions to instructions, to be effective, must be taken at close of submission of case.

11. Appeal and error ☞977(1)—Error cannot be assigned on overruling of motion for new trial.

Error cannot be assigned on overruling of motion for new trial.

In Error to the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Action by Ross Luyben against the Cudahy Packing Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Yale C. Holland, of Omaha, Neb. (J. A. C. Kennedy, George L. De Lacy, Charles F. McLaughlin, and Philip E. Horan, all of Omaha, Neb., on the brief), for plaintiff in error.

Wymer Dressler, of Omaha, Neb. (Robert D. Neely and Arthur C. Thomsen, both of Omaha, Neb., on the brief), for defendant in error.

Before STONE and VAN VALKENBURGH, Circuit Judges, and PHILLIPS, District Judge.

VAN VALKENBURGH, Circuit Judge. Plaintiff in error has a packing house in South Omaha, Neb., and in connection therewith operates a shed, into which cars are switched for the purpose of being loaded with the products of the packing house. When so loaded, they are withdrawn for purposes of transportation by switching crews in the employ of the Union Stockyards Company at South Omaha. On one side of the interior of this shed is a provision-loading dock; on the other, a beef-loading dock. Two main tracks traverse this shed, which is more than 464 feet in length. On one side, along the provision-loading dock, there are windows; on the side of the beef-loading dock there are none. Near the entrance of the shed there is a red incandescent light. Beginning at a point within the shed, about 25 feet from its entrance, what is known as a car-icing walk or runway, traverses the shed lengthwise for a distance of about 464 feet. This runway is placed there for convenience in icing cars upon the loading tracks. It extends over what may be termed the beef track to a point about midway between the edge of a freight car, passing along and under it, and the running board, which is located along the center of the roof of the car. At the point of its beginning this runway stands 4½ feet above the roof of such car, and gradually declines until at the farther end of the shed it is but 2½ feet above a car roof.

Defendant in error was a switchman in the employ of the Union Stockyards Company at South Omaha. He had been such since March 1, 1922. About 6:30 p. m., April 11, 1922, as such switchman, in attendance upon the switch engine and cars thereto attached, he entered this shed, with the switching crew of which he was a member, as he expresses it, "to pull the beef house"; that is, to couple and pull out the cars loaded with

beef upon the beef track. Others of the crew were at the rear end of the shed, and defendant in error occupied a position but one or two cars removed from the engine, for the purpose of relaying signals to the engineer. The switching train entered the shed from the east. The cars attached to the switch engine were backed into the shed; the engine being at the easternmost point of the train. Defendant in error received a signal from the rear, which he interpreted to mean that the cars on the beef track were all coupled, whereupon the signal to pull out was given. Before the train had proceeded a great distance from the shed, defendant in error perceived that the other members of the switching crew were not with it. This indicated, either that all the cars had not been coupled, or that some had become detached. It was necessary, therefore, to return to the shed to pick up those that had been left.

Luyben took his place at first, as he says, upon either the third or fourth car from the engine; but, as the train entered the shed, backing as before, it became necessary for him to move toward the engine, in order that his signals might be seen by the engineer. The track entered the shed on a curve, and this made it necessary for him to leave the running board in the center of the car, and to take a position toward the side of the car roof, from which point his signals could be seen from the engine . He was thus compelled to divide his attention between receiving signals from within the shed and relaying them to the engineer. There was no artificial light within the shed, unless, perhaps, the red incandescent light at the entrance, about which there is some dispute, and the signals were necessarily conveyed by lanterns. While thus occupied, defendant in error was struck by some object, which he alleges was the car-icing walk, was thrown between the cars upon a drawbar, and suffered severe injuries, mainly to his back, which, from the testimony, may fairly be taken to be permanent.

As negligence on the part of plaintiff in error, the petition in substance charged that the runway in question was carelessly, negligently, and dangerously constructed, placed, and maintained; that the shed was dark, and that a suitable light was not provided, in view of the dangerous construction within the shed. By its answer plaintiff in error pleaded contributory negligence and assumption of risk, and charged negligence, if any, on the part of the stockyards company, employer of defendant in error, with whom the latter had made a settlement in part, reserving his right to proceed further against the Cudahy Com-

pany. Upon trial the jury returned a verdict for defendant in error, and assessed his damages at $18,233. The specifications of error relied upon for reversal are thus stated in the brief:

"First, because there was no evidence that the packing company operated the shed and runway; second, because the packing company owed the plaintiff only the duty not wantonly to injure him, which duty was performed; third, because it is wholly conjectural whether plaintiff fell from the car by reason of being hit by the runway, or for some other reason; fourth, because it was daylight, both inside and outside the shed, and no negligence could be predicated upon the proposition of insufficient lighting; fifth, because the runway was neither negligently located nor negligently maintained; sixth, because the evidence conclusively established that plaintiff assumed the risk whatever danger there was; and seventh, because the evidence conclusively established that plaintiff was guilty of contributory negligence."

[1] At the trial, counsel for plaintiff in error insisted that there was no evidence that the packing company owned the shed and runway. This is clearly beside the point. The evidence is conclusive that the packing company operated this shed and runway, and tendered it, equipped as it was, for cars operated by the stockyards company and its employees to enter in due course of switching operations for the removal of the packing company's products. In such case it is unimportant in whom the technical legal title or ownership may be lodged.

[2] It is urged that the packing company owed the plaintiff only the duty not wantonly to injure him. This involves a definition of terms. It is clearly negligence on the part of any one, whether stranger, invitor, or employer, with knowledge of what is to be done, to maintain a place which is not reasonably safe, in view of the activities and operations therein mutually contemplated.

[3] It is next contended that it is wholly conjectural whether plaintiff fell from the car by reason of being hit by the runway, or for some other reason; the other reasons in this case being the ice chute, as distinguished from the runway, or from possibly losing his balance and falling from the car on that account. The ice chute was originally pleaded in the alternative with the runway, because plaintiff alleges that he was struck by something which he did not see, while absorbed in his work. The conditions there existing were placed before the jury, the position both of the chute and the runway, and plaintiff finally, by proper amendment under the evidence, allowed in the discretion of the court, eliminated the ice chute and confined himself to the runway. The evidence of a possible losing of his balance was before the jury. In our opinion, this claim is entirely conjectural and unsubstantial. It is predicated upon the fact that a witness testified that he saw Luyben's hat fly off at the time of the accident. He was struck on the forehead, near the left eye. The logical conclusion is that this caused his hat to fall. It is unnecessary to resort to conjecture. At any rate, this question was submitted, and was resolved by the jury.

[4, 5] It is next urged, in the language of the specification, that it was daylight both inside and outside the shed, and no negligence could be predicated upon the proposition of insufficient lighting. This question raises the sufficiency of the negligence pleaded and proved. The accident took place at about 6:30 p. m. on the 11th of April. We may take judicial notice of the fact that daylight is waning at that hour and time of year. It is conceded that the sun was still shining from the west, the direction in which the switch train was moving. It was, as he says, in the face of defendant in error as he approached the opening. That the shed, upon entering it and for a distance of 25 feet between the opening and the point at which the runway began, would appear darker even than it would appear after the eye had adapted itself to the changed condition, is a matter of common experience.

There was conflicting evidence upon the question of light. It is practically conceded that there was within the shed no artificial light burning, unless it may have been the small incandescent red light near the entrance. Some of the witnesses say that this light was not burning; others, for plaintiff in error, that it was burning. In any event, the light from it could not have been great. From the record before us it cannot be said, as matter of law, that the place was light enough to discern objects readily within the short period that elapsed after defendant in error entered the shed. The assignments of negligence present the issue of whether this construction of the runway was negligent, and whether the light, under such circumstances, was reasonably sufficient to protect one entering the shed in this manner. Standing alone, perhaps, neither construction nor absence of light would in itself be sufficient. The question is whether the position of this runway, obviously a menace to a switchman upon the roof of a car, was dangerous, in the absence of the light there provided, and

whether the combination of that dangerous construction and inadequate lighting disclosed negligence on the part of plaintiff in error. We think this issue was fairly tendered and submitted.

A rule of the stockyards company, with which, it is alleged, defendant in error, as an employee, must be presumed to have been familiar, was introduced. That rule is in the following language: "Extra care must be taken in setting cars to all parts of this plant to avoid collision with bridges, ice runways, or other overhead obstructions." This, if in mind at all, might well have been taken as a warning to avoid injury to rolling stock and plant. That it could have been taken as a warning to employees to avoid personal injury is remote; but at any rate that rule was before the jury for its consideration.

The circumstances under which defendant in error entered the shed this second time compelled him to discharge a double duty. In relaying signals, he was called upon to take the position he did. The train entered the shed upon a curve, which required him to stand on the side of the car and to lean over, in order to be seen from the engine. He was compelled to watch for signals from the farther end of the shed and to transmit them to the engineer. In this way his attention was much engrossed, and, even if he had known of this particular runway and its location, he might well have fallen into inadvertence, and such a situation was to be anticipated in the nature of the switching operations there. This runway was extended for some little space over the tops of cars entering the shed. Absolute safety required a position on the running board, which was impracticable in this case, as it often is in switching. The edge of the runway was but 4½ feet above the car at the beginning. There was evidence, therefore, sufficient for the jury to consider, whether the runway was negligently located and maintained, and whether the light under the circumstances was sufficient.

[6, 7] It must be remembered that defendant in error was not an employee of plaintiff in error, and therefore the latter cannot invoke the doctrine of assumption of risk applicable between employer and employee; but, assuming, without conceding, that the relationship disclosed could make such a defense available, we think the jury was justified in resolving this issue against plaintiff in error. The rule is that an employee assumes all the risks of his employment of which he has knowledge, or which are so obvious that he must be held to have known and appreciated them, taking into account his age, experience, and the degree of his intelligence. The extent to which defendant in error was familiar with the premises was disclosed in the testimony. At most, it is not claimed that he was in this shed more than twice before. He says that he had entered it but once before, and that he had never seen this runway overlapping the cars on this track. Whether he must be held to have assumed the risk there present was properly for the jury, and was resolved in his favor.

[8] Plaintiff in error also complains of the charge of the trial court in defining the rule governing the effect of contributory negligence, if any. The Nebraska comparative statute (Comp. St. 1922, § 8834), which the court read to the jury, is as follows: "In all actions brought to recover damages for injuries to a person * * * caused by the negligence of another, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery when the contributory negligence of the plaintiff was slight and the negligence of the defendant was gross in comparison but the contributory negligence of the plaintiff shall be considered by the jury in the mitigation of damages in proportion to the amount of contributory negligence attributable to the plaintiff."

Concerning this the court in its charge said: "So you see, if you find that he was negligent, you apply that rule of law. Unless his negligence was gross in comparison with that of the defendant, he would still be entitled to recover; but the amount of his recovery would be mitigated as specified in the statutes. * * * If he fails to do what an ordinary man would do, or does something which such a man wouldn't do in the exercise of ordinary care, he is negligent himself. If that causes his injury, then it is gross. The law I read you under the statute is to be taken into account. * * * Under all the circumstances, was he negligent? If he was, and his negligence was gross, he could not recover at all, and you must not allow him anything."

It is apparent that the court made an inadvertent use of the word "gross" in applying the state statute; however, that statute was read to the jury. But to these remarks no exception was taken; not only so, but the only exception to the entire charge, announced by counsel for plaintiff in error upon invitation of the court, was this: "In connection with the instruction you have just given as to the law of contributory negligence I request that you instruct the jury that evidence may emanate from either plaintiff's or defendant's witnesses and any part of the

case, and it will sustain that burden likewise from whatever source it comes." To which the court replied (speaking to the jury): "Now, that is an exact and correct statement of the law. You must consider it as the law, in connection with what I have stated to you."

So, with the charge of contributory negligence in mind, counsel impliedly acquiesced in what the court had said, and requested but one thing more, which the court promptly gave. If the point now complained of had been called to the attention of the court, it would undoubtedly have been corrected. In our judgment the evidence of contributory negligence was negligible, and we do not think any confusion was produced in the mind of the jury. In the absence of exception, under the circumstances disclosed, this assignment cannot be considered.

[9] Complaint is also made of the court's comment upon the severity of the injuries and the latitude permitted to the jury in the assessment of damages. To this part of the charge no challenge by way of exception was even suggested. The comment complained of was within the legitimate province of the court in any event, and certainly cannot now be criticized in the absence of exception.

[10, 11] The judgment in this case was rendered January 18, 1924. By motion for a new trial, filed some time later, plaintiff in error sought to take aditional exceptions to the instructions given by the court; its application was properly refused. Such exceptions, to be effective, must be taken at the close of the submission to the jury in order that the court may have opportunity to correct errors of statement, if any have been made. Furthermore, no error can be assigned to the action of the trial court in overruling a motion for new trial.

The result is that the judgment should be and is affirmed.