National Builders Bank of Chicago, Administrator of Estate of Ralph Biggs, Deceased, Appellant, v. Herbert Schuham, Appellee.

Gen. No. 42,020.

Opinion filed June 16, 1943.

HARRY GEORGE, of Chicago, for appellant.

GEORGE C. BLISS and ABRAHAM LEPINE, both of Chicago, for appellee.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

This action was brought by National Builders Bank of Chicago, administrator of the estate of Ralph Biggs, deceased, against defendant, Herbert Schuham, to recover damages for the death of Biggs which was alleged to have been caused by the negligence of defendant. The trial court reserved its ruling on defendant's motion for a directed verdict at the close of plaintiff's case. No evidence was presented by defendant and the trial court also reserved its ruling on defendant's motion for a directed verdict at the close of all the evidence. The cause was submitted to the jury which returned a verdict finding defendant guilty and assessing plaintiff's damages at $1,000. After denying defendant's motion for a new trial the court allowed his motion for judgment notwithstanding the verdict. Plaintiff appeals from such judgment.

Plaintiff's amended complaint alleged substantially that on and for sometime prior to December 2, 1938 defendant owned the building at 1008 West Madison street, Chicago, Illinois, in which he operated the

Adams Hotel; that decedent Biggs and defendant entered into a written contract under the terms of which the former agreed to paint certain window frames and sashes and other portions of said building; that under said contract decedent was invited upon defendant's premises to perform the work specified therein; that on December 2, 1938, while Biggs was in the exercise of due care and caution for his own safety "in painting a window frame on the third floor of said building . . . and without any knowledge of the dangerous and unsafe condition of said window, the said window or window frame collapsed"; that Biggs was thereby thrown to the ground and suffered injuries which resulted in his death six days later; that it was the duty of defendant to maintain the window frames in his building "in a reasonably safe and proper condition so as not to injure and cause injury to persons lawfully on said premises"; and that "unmindful of his duty the said defendant negligently suffered and permitted said window frame to be and become in a dangerous and unsafe condition in this that the said window frame became rotted and broken, and loosened from the wall in which said window frame was fastened, and that said defendant had full and complete knowledge of said dangerous and unsafe condition, or in the exercise of ordinary care and caution could or should have had knowledge thereof."

Defendant admitted his ownership and operation of the building in question but denied all other material allegations of the amended complaint.

It appeared that Biggs is the same person who under the name of J. Stanley entered into a written contract with defendant on July 24, 1938 to do certain painting in the Adams Hotel for $150, including the window frame and window sash involved herein. Biggs commenced work on this paint job sometime in the summer of 1938 and worked at it intermittently when he was not elsewhere engaged. On the after-

noon of December 2, 1938 he was working on the thirty-second or last window covered by his contract. The lower sash of this window was removed and placed in the room. The upper sash was stationary but it could have been easily removed from the frame. Biggs sat on the window sill facing the window, with his body extending outward beyond the window. While he was in that position he was reaching upward with a paint knife in his right hand and scraping off the old paint from the outside of the upper part of the top window sash. The lower cross-bar of that sash broke almost at the center and fell away from said sash carrying some or all of the glass in the window pane with it. This caused Biggs to lose his balance on the window sill and he fell to the roof of an adjoining one-story building, thereby receiving his fatal injuries.

Frank Zangrilli, the only eyewitness to the occurrence, testified that he was sitting in his office at 17 North Morgan street which was a short distance to the east of the east side of the Adams Hotel; that he "was watching a man painting a window—scraping some old paint off a window . . . the man sitting on the ledge, on the window-sill, and he had reached his arm—he had put his left arm up to hold himself—to balance himself on the sill, and was scraping up with his right hand to get the scales of paint off the outside of the window . . . the man had not sat there for a minute or two when the cross-bar of the sash gave away, and he came falling down, tumbling down to the one-story building that is directly next door to the hotel that he was painting . . . I saw him fall out of the window . . . the cross member of the bottom—of the sash fell—broke out and came down with him, including the window-pane"; that "he noticed the piece of wood that fell down from the window and picked it up"; that "the wood was rotted"; that "the piece was broken . . . from the man pulling it down, it broke

right in half . . . it came down on the corners, broke in half, and the ends came down also''; that he could tell from the broken parts of the cross-bar of the sash that they were ''joined by a tongue and groove, the vertical pieces, to the cross member of the sash . . . the ends were broken out . . . the cross-bar . . . was broken in two pieces about 12 or 13 inches long.''

Zangrilli testified on cross-examination that as decedent sat on the window-sill scraping the scaling paint from ''the upper right hand corner, the extreme outside of the window'' he did not hold onto the cross-bar of the sash with his left hand but had about half of his forearm under said cross-bar; that ''I would not call it a leverage . . . I would call it more to sort of brace himself, just holding on''; that he saw ''that bar gave way . . . right in the crook of his elbow''; that the piece of the sash that he picked up on the roof where Biggs fell was ''brown with rot'' one the inside; that it was decayed at the point where the sash broke.

Joseph Searcy testified in plaintiff's behalf that the next day after Biggs' accident he ''found the cross-bar of the top half of the window—the lower cross-bar was broken and the glass was all broken out, and the window was unrepairable and I had to replace it with a new one . . . I found a cross-bar on the roof down below . . . it was very much decayed and very weak . . . it was broken in the center''; that he took said cross-bar home and after keeping it for a few years it was lost. Searcy testified on cross-examination that the break in the cross-bar of the sash was ''splintery-like . . . on one side I saw splinters there.''

John J. Hennessey testified that he was a police officer and that he had been assigned to investigate the decedent's accident; that sometime after the occurrence he saw the lower cross-bar of the upper window sash in Searcy's possession; and that ''it was

an old piece of a part of an upper sash, broke in half . . . it was a stick, about 30 inches in length, which would be the lower part of the upper sash of the wood that goes across and holds the glass up . . . it was an old piece of wood.''

The only question presented for determination is whether the action of the trial court in entering judgment notwithstanding the verdict was proper. Plaintiff insists that whether decedent was free from contributory negligence and whether defendant was guilty of actionable negligence were questions of fact for the jury and that the evidence amply supported the jury's verdict. On the other hand it is contended that under the undisputed evidence decedent was guilty of contributory negligence and defendant was not guilty of actionable negligence as a matter of law. In passing upon the propriety of the action of the trial court in rendering judgment in favor of defendant notwithstanding the verdict, the evidence, including all reasonable inferences deducible therefrom, must be considered in its aspect most favorable to plaintiff.

It is a familiar principle in the law of negligence that every man who expressly or by implication invites others to come upon his premises assumes to all who accept the invitation the duty to warn them of any danger in coming, which he knows of or ought to know of, and of which they are not aware. (27 Am. Jur. 510, sec. 30.) An owner owes such duty to an independent contractor or his servants while working upon his premises. (*Calvert v. Springfield Electric Light & Power Co.*, 231 Ill. 290.)

The rule governing the duty owed by the owner of property to an independent contractor employed by him and to the latter's servants is clearly stated in *Nettis v. General Tire Co. of Philadelphia*, 317 Pa. 204, where the court said at pp. 209, 210:

''It is the rule that the owner of property owes to an independent contractor and his servants at work thereon the duty of exercising reasonable care to have

the premises in a safe condition for the work, unless the defects responsible for the injury were known to the contractor. The owner is not charged with the absolute duty of having the premises safe; his duty is discharged by the exercise of reasonable care. All the authorities agree that it is incumbent upon the owner of premises upon which persons come by invitation, express or implied, to maintain such premises in a reasonably safe condition for the contemplated uses thereof and the purposes for which the invitation was extended; *Newingham v. J. C. Blair Co.*, 232 Pa. 511; *Craig v. Riter-Conley Mfg. Co.*, 272 Pa. 219. . . . While the owner . . . is required to use reasonable care to guard the employees against injury, he will not be liable where causes of the injury intervened which he neither did nor could expect: *Rugart v. Keebler-Weyl Baking Co.*, 277 Pa. 408. 'An owner of a building is not liable for injuries to a servant or to a person lawfully upon his premises by reason of latent defects of which he was ignorant and which could not have been discovered by the exercise of reasonable care and diligence.' *Lentz v. Allentown Bobbin Works,* 291 Pa. 526.''

Under the undisputed facts and circumstances in evidence as to decedent's conduct it might well be held as a matter of law that he was guilty of contributory negligence and that he assumed the risk of being injured in the manner in which he was injured while engaged in painting or preparing to paint the window in question, but we prefer to rest our decision on the utter failure of plaintiff to prove any actionable negligence on the part of defendant. There being no evidence that the defendant actually knew of a dangerous condition in the window sash, if he is to be held liable it can only be because there is evidence in the record warranting the conclusion that he failed to use the care that an owner of ordinary prudence in

the same situation as he, would have used to discover the rotted or decayed condition of said window sash.

It will be remembered that it was only after the accident occurred that it was learned that a portion of the interior of the lower bar of the sash was rotted. It is not claimed that the evidence showed that any rot or decay was discernible on the outside of the lower bar of the sash prior to the accident. There was no rot in the wood discoverable by an ordinary and reasonable inspection before the decedent commenced to work on the window sash in question, because, if there was, he would unquestionably have discovered it himself, since his work brought him into direct contact with it. Under the facts of this case it must be held as a matter of law that the defendant was not guilty of negligence unless it was his duty in the exercise of reasonable care to take or saw apart the lower bar of the sash in question to discover whether it had rotted on the inside before he permitted decedent to paint or prepare to paint said sash. Defendant was under no such duty. To hold the owner liable under the circumstances shown here would place upon him an unreasonable burden which the law does not do. He was only required to use reasonable care to protect those lawfully upon his premises. This degree of care did not place upon the defendant property owner the task of testing the wood in the sashes of all the windows covered by the contract before permitting decedent to paint same.

In so far as we have been able to ascertain the Supreme Court of this State has not been called upon to determine the precise question presented here under a factual situation at all similar to that in the case at bar. We have examined all the authorities cited by plaintiff. The only one of them wherein the facts even remotely compare with the facts in this case is *Houlihan v. Sulzberger & Sons Co.*, 282 Ill. 76. In that case the-

defendant made a contract with the Hamler Boiler and Tank Works for the repair of the smoke stack on its building. Inside the building there was a stairway leading to the fifth floor and a stationary ladder from the fifth floor to the skylight on the roof. There was also a wooden ladder attached to the side of the building from the roof of an adjoining building to the roof of defendant's building. This ladder was painted red and was apparently intended to be used as a fire ladder in case of emergency. The deceased was an employee of the Hamler Boiler and Tank Works and while using the outside ladder to go up on the roof of the building in the performance of his employer's contract, certain rungs of the ladder, which had become rotted, gave way and the deceased fell to the roof of the adjoining building and was killed. In holding that no error was committed by the trial court in refusing to direct a verdict for the defendant owner and that the case was properly submitted to the jury, the court there said at pp. 79 and 80:

"If the deceased had gone up the stairway and ladder inside the building he could not reasonably be called a trespasser, and if he had been injured by reason of their defective condition the plaintiff in error would not have been relieved of liability. The fact that of two ways, apparently equally available, he chose the one that was more convenient does not change the rule. . . . The rotten condition of the ends of the rungs for a half inch to an inch from their ends, so that a nail could be pulled through and the ends crumbled with the fingers, as testified to by witness, tended to show that the condition must have existed for a longer time than two months and could have been discovered by a thorough inspection. . . . To say the least, it was a question of fact whether a reasonably thorough inspection of an appliance of this character would not have disclosed is unsafe condition."

The rule as enunciated in the foregoing case is not applicable to the factual situation presented here. In this case the defective and dangerous condition was not open and obvious and was not discoverable by the exercise of ordinary care on the part of the owner.

In the *Houlihan* case the rotten condition of the ends of the ladder rungs was open and obvious and such condition was discoverable by the exercise of ordinary care. When a nail could be pulled by hand through the exposed rotten part of the rungs of the ladder and the rotten ends "crumbled with the fingers," it certainly was, as the court said in that case, "a question of fact whether a reasonable thorough inspection of an appliance of this character would not have disclosed its unsafe condition."

Since under the evidence in this case the defendant neither knew nor reasonably should have known of the defective condition of the lower bar of the upper window sash, he is not liable as a matter of law, and his motion for judgment notwithstanding the verdict was properly allowed.

The judgment of the superior court of Cook county is affirmed.

*Judgment affirmed.*

FRIEND and SCANLAN, JJ., concur.