HENRY S. NOWICKI, Plaintiff-Appellee, *v.* UNION STARCH AND REFINING COMPANY, Defendant-Appellant.

(No. 68-111;

Fifth District—July 30, 1971.

*Rehearing denied September 21, 1971.*

MORAN, J., dissenting.

Bernard and Davidson, of Granite City, (Burton C. Bernard, of counsel,) for appellant.

Chapman, Strawn, Kinder & Talbert, of Granite City, (Morris B. Chapman, of counsel,) for appellee.

Mr. JUSTICE VERTICCHIO delivered the opinion of the court:

The defendant, Union Starch and Refining Company, appeals from a judgment in the sum of $65,000.00 in favor of the plaintiff, Henry S. Nowicki, entered upon a verdict in the circuit court of Madison County in plaintiff's suit for personal injuries.

Plaintiff, Henry S. Nowicki, sued to recover damages for personal injuries suffered on June 22, 1965, while doing construction work on the premises of the defendant in Granite City, Illinois.

The defendant complains of numerous errors committed during the trial. The alleged errors and the evidence adduced by the parties will be reviewed and discussed to the extent necessary to this opinion.

The plaintiff was working for a contractor, Minnette Boiler and Sheet Iron Works, engaged to perform work for the defendant, Union Starch and Refining Company, of Granite City, Illinois, under a purchase order dated April 15, 1964. The plaintiff's employer agreed to fabricate and erect two new 3,500 bushel stainless steel tanks, numbers seven and ten, in defendant's steep house.

The evidence showed that the defendant was engaged in processing corn into products consisting of dried starches, syrup, glucose, caramel, textile, and paper. The part of defendant's operation involved in this case concerns work performed in a "steep house." The evidence discloses that in the steep house were twenty water pumps, that water was used to wash down the floors and that the tanks would overflow; as a result the floor and bottom of the tanks were wet.

In 1960 the defendant commenced a program of replacing the old wooden tanks with new stainless steel tanks. The tanks were replaced two at a time and the usual work was not discontinued while the replacements were being made. The agreement provided that the plaintiff's employer was to erect two new stainless tanks, being numbers seven and ten. These tanks were made of five or six rings which were made to a radius and each ring had three sheets. The erection consisted of placing the legs of the tank on concrete bases which were below the level of the floor. The bottom of the tank was cone-shaped and the top had a steel roof. Because of the water and overflow, the contractor putting in the foundations had to sandbag the area to keep it dry. The new tanks were to have a capacity of 3,500 bushels and were about fifteen feet in diameter and forty-seven feet in circumference and were six to eight feet higher than the old tanks.

The evidence further showed that due to a hailstorm in April, 1964, the roof on the steep house was damaged and that when it rained, the roof leaked in many places and particularly over the area where tanks seven and ten were being erected. In between the tanks were steel I-beams which ran from the east wall to the west wall in the steep house which were about seven and one-half inches wide and over the I-beams was a catwalk which did not extend completely to the wall of the building.

The plaintiff, a boilermaker for twenty-two years, commenced working in the defendant's plant about the middle of May, 1965, and had been working about five weeks before June 22, 1965, the date of the incident in question. In the afternoon of June 22, 1965, the plaintiff was instructed to fit a roof on to tank number seven. The roof consisted of two pieces of steel and weighed about one thousand pounds. The pieces for the roof were picked up by a chain fall from the top of tank number eight and moved over to tank number seven. It was necessary to use the I-beam on both sides of the tank to put on the roof. The plaintiff walked out from the catwalk onto the I-beam and was using a sleever to pry the roof up to fit on the lugs so it could be welded. His foot slipped out from under him and he fell on to a chute which was on top of the old wooden tank injuring his left knee.

It is not controverted that the plaintiff saw the roof leaking and saw water on the I-beam before he went out on it and that his shoes were not dry as he walked out on the I-beam.

The defendant's first complaint of error arises out of a ruling of the court imposing upon the defendant the duty to furnish the employees of the contractor with a safe place to work.

The basic theory of the defendant in this case is that the trial court erred in accepting the plaintiff's contention that the defendant owed the plaintiff a safe place to work and that the openness of the risk of injury and the obviousness of the danger were irrelevant in determining the defendant's duty of care, by rulings on various motions and instructions.

The defendant cites Illinois cases which generally adopt the principle announced in *Calvert v. Springfield Electric Light and Power Co.*, 231 Ill. 290, at page 293. "The law is well settled that an owner or occupant of land who by invitation, express or implied, induces or leads others to go upon premises for any lawful purpose is liable for injuries occasioned by the unsafe condition of the land or its approaches, if such condition was known to him *and not to them,* and was negligently suffered to exist without timely notice to the public or to those who are likely to act upon such invitation, *and if there are hidden dangers upon the premises* he must use ordinary care to give persons rightfully upon the premises warning thereof, and that the owner owes such duty to an independent contractor or his servants while working upon his premises." (Italics ours)

█ This principle is contrary to the theory of plaintiff inasmuch as the presence of the water of which he complains was as well known to him as to the defendant. It was not a hidden danger and was obvious to all. The trial court found that the conditions involving the area around the tanks and at the floor level, including the conditions of the roof, were known to plaintiff and, further, that plaintiff also knew his shoes were wet and that the I-beam was wet. In *National Builders Bank of Chicago v. Schuham*, 319 Ill.App. 546, the court held that the owner of property owes to an independent contractor and his servants who work thereon the duty of exercising reasonable care to have the premises in a safe condition for the work, unless the defects responsible for the injury are known to the contractor and his servants.

In *Craig v. Olin Mathieson*, 427 Fed. 2d 962 (1970, U.S.C.C.A., 7th Cir.), the court concluded that under the law announced by the Illinois courts the owner is not liable for injuries resulting from conditions obviously dangerous and known by the contractor or his employee. In their opinion the said court cited *Calvert v. Springfield Electric Light and Power Co., supra; National Builders Bank of Chicago v. Schuham, supra; Ragni v. Lincoln-Devon Bounceland, Inc.* (1968), 91 Ill.App.2d 172.

The court in the *Craig* opinion also cited *Deaton v. Board of Trustees of Elon College*, 226 N.C. 433. "In that case the college employed an independent contractor to make repairs of its electrical system. The defendant was held as a matter of law not liable for the death of one of the employees who while standing on wet ground touched a live wire and

was electrocuted. The independent contractor knew at the time of making the contract that some of the wires were high tension. The court concluded that the owner was not liable for injuries resulting from conditions obviously dangerous and known by the contractor. Further, the court reasoned that the contractor was an expert, exercising his specialized knowledge according to his own judgment and with his own devices, and that he was aware of the danger inherent in the condition, as well as the peril incident to handling live wires while standing on wet ground."

The defendant urges that the issue of the plaintiff's knowledge of the conditions is not relevant and cites as an exception the rule enunciated in the headnote of 57 C.J.S., Master and Servant, Sec. 603 at page 374, wherein the text reads as follows: "An employer who reserves the right to direct the manner of performing the details of the work or interferes and assumes control may become liable for an injury to the servant of the contractor."

There is testimony on the record that the defendant retained some supervision of the work, however, in view of the court's instructions, particularly plaintiff's Instruction # 3, "The owner of property owed the plaintiff the duty to exercise ordinary care to keep the property reasonably safe for use by the Plaintiff" and plaintiff's Instruction # 6, "The plaintiff claims he was injured and sustained damage while exercising ordinary care, and that the defendant was negligent in one or more of the following respects:

a) In negligently and carelessly failing to furnish plaintiff a safe place in which to work;

b) In negligently and carelessly failing to provide an appropriate place upon which plaintiff could stand to do his work;

c) In negligently and carelessly permitting the roof of the premises wherein plaintiff was working to leak, and consequently allowing rain to fall onto the I-beam upon which plaintiff was standing, causing it to be slick and hazardous;

d) In negligently and carelessly causing the plaintiff, in the course of his work, to stand above an open and dangerous area without proper guards or protection to prevent him from falling from the place on which he was standing.

The plaintiff further claims that one or more of the foregoing was the proximate cause of his injuries.

The defendant denies that he did any of the things claimed by the plaintiff, denies that he was negligent, denies that any claimed act or omission on the part of the defendant was a proximate cause of

the claimed injuries, and denies that the plaintiff was in the exercise of ordinary care.

The defendant further denies that plaintiff was injured or sustained damages to the extent claimed,"

thus, this contention has no merit. The employer rule referred to in 57 C.J.S., *supra*, is not applicable since neither the trial judge nor the jury made any finding to the effect that the defendant's supervision amounted to control.

Because we are reversing the judgment and remanding the cause for a new trial, the court will comment on other errors cited.

As to the issue directed to the assumption of risk doctrine, in view of the court's rulings hereinabove set out, it is the court's finding that the issue is moot.

■■ As to the alleged error in excluding defendant's impeachment of plaintiff concerning the length of time plaintiff was on the wet I-beam before he fell, it is the opinion of this court that this was within the discretion of the trial judge and the judge properly ruled.

The trial court's rulings were:

"a. That there was no inconsistency between the testimony and the prior statement.

b. The impeachment was not relevant to the issues. An examination of the record reveals that on cross-examination the plaintiff testified that he had worked on the wet I-beam "half a minute-thirty seconds" before he fell. The proposed impeachment was that a prior inconsistent statement on deposition was, "How long were you on this beam before you fell?" to which the plaintiff responded, "A very few minutes."

It is this court's opinion that the trial court's finding that there was no inconsistency between the testimony and the prior statement and, further, that the impeachment was not relevant to the issues was correct.

As to the alleged error in curtailing the defendant's cross-examination of plaintiff and excluding medical testimony concerning a prior injury to the plaintiff's left knee, the court finds that the exclusion of said testimony was error. When a plaintiff attempts to produce expert evidence to establish a causal connection between an injury and a condition, it is sufficient that the expert state that there might or could be such a connection. When the evidence of the cause of a condition or injury is contested, a witness may not testify directly as to what caused the condition or injury, because to do so would invade the province of the jury, but the witness may testify as to what could or might have caused the injury. Callaghan's Illinois Evidence, § 7.49 and cases cited therein. The

same rule should apply when a defendant offers an expert. Thus, the defendant does not have to prove that the bullet which struck plaintiff in a childhood accident did cause or contribute to cause a condition, but it is sufficient that the expert witness testify that there might or could be a connection.

As to the alleged errors of plaintiff's counsel throughout the trial, an examination of the record indicates that conduct of both counsel was of a nature that is not conducive to a fair trial. On remand, conduct of attorneys should be restricted to produce that result.

For the reasons herein set forth, the judgment of the circuit court of Madison County is reversed and cause remanded for a new trial.

Reversed and remanded.

EBERSPACHER, P.J., concurs.

Mr. JUSTICE MORAN, dissenting:

The majority opinion relies principally upon the rationale of *Craig v. Olin Mathieson*, 427 Fed. 2d 962 (1970, U.S.C.C.A., 7th Cir.), which pointed out that plaintiff's employer was an independent contractor, stating, "In summary, the area involved, owned by Olin, was turned over to the contractor who by the terms of the contract had 'absolute and full power of management and direction in all matters relating to such work.'" This was not the relationship between Nowicki's employer and Union Starch because Union Starch retained control of the premises, removed control of Nowicki's working conditions from his employer, and was guilty of active negligence in causing plaintiff's injuries.

The distinction not recognized by the majority opinion between the legal problems in a case where the owner is truly an independent contractor and the present one is aptly illustrated by *Reboni v. Case Brothers*, 78 A.2d 887, where the court said at pages 889-90:

"The defendant relies on a dictum in Douglass v. Peck & Lines Co., 89 Conn. 622, 629, 95 A. 22, 25, reading as follows: 'The owner of premises is not responsible to an independent contractor for injury from defects or dangers which the contractor knows of, or ought to know of. But if the defect or danger is hidden and known to the owner, and neither known to the contractor, nor such as he ought to know, it is the duty of the owner to warn the contractor, and if he does not do this, he is liable for resultant injury.

'The same rule applies to the servants of the contractor and the sub-contractor and his servants.' This statement was not applicable to the facts of the case cited because the injury there complained of was not

due to the condition of the property. It applies to a situation where the contractor has control of that portion of the premises where the accident occurs. It does not apply where the owner has retained or assumed control thereof. The complaint of the defendant is based on the refusal of the trial court to limit the duty of the defendant to one of warning of a hidden danger. In the case at bar, the owner was in possession and control, and the statement in the Douglass case does not apply.

The plaintiffs were entitled to rely on the further direct statement in the Douglass case 89 Conn. at page 629, 95 A. at page 25, also contained in the charge: 'Whether the owner remain in partial use of the premises or not, he is liable for injury caused to the contractor or his servants by his own negligence.' The complaint charged and the claims of proof were that the plaintiffs' injuries were due to the defendant's negligent act of omission."

The undisputed evidence discloses that Nowicki slipped on a wet I-beam while working and erecting a tank on Union Starch premises; that the wetness was caused by rain coming through a hole in the roof of Union Starch Company and that water had come through the hole in the past every time it rained; that other working areas were continuously wet because of the operation of defendant's plant. The contract contained the following provision: "That this work must be performed while our plant is in operation. Special precautions must be taken by the contractor to insure the plant operations are in no way interrupted by this work or material."

From the foregoing, I conclude (1) that there is no question but that the defendant was negligent in permitting the water to drip on the I-beam surface where plaintiff had to work, (2) that Union Starch retained control of the premises where plaintiff worked while the contract was being performed, and (3) that the contract provision requiring the work to be performed while the plant was operating, effectively removed control of the working conditions from Nowicki's employer and in a large part increased the dangers that Nowicki was compelled to work under.

In *Louis v. Barenfanger*, 39 Ill.2d 445, the Supreme Court stated at page 448: "Certainly, the failure to furnish a scaffold could be actionable at common law in many negligence situations. Thus, it is well-established that a general contractor in control of premises must furnish the employees of sub-contractors a safe place to work. See: 20 ALR 2d 873."

There is no question that the owner who retains control of the premises or interferes with the manner in which the work is performed owes the same duty.

The owner or occupant of property owes an invitee the duty to exercise ordinary care to keep the property reasonably safe for use by the invitee. I.P.I. 120.06. The duty of an owner or occupant who hires a contractor to do work on the premises, but who retains control of the premises or of the work to be performed, is the same, although it is usually expressed in different terms. I.P.I. does not cover this situation, but the following standard California instruction does:

B.A.J.I., Vol. 2, No. 213-G:

"When an (owner) (or) (occupant) of premises expressly or impliedly invites a workman to enter the premises for the purpose of performing thereon some service from which both parties expect to benefit, the (owner) (or) (occupant), to the end of protecting the workman, is required to use reasonable care to provide him with a reasonably safe place in which to work and in seeing that such equipment and facilities as are under the (owner's) (or) (occupant's) control, and which the workman is likely to use, are reasonably safe for such use in carrying out the purpose of his employment."

In *Cudahy Packing Company v. Luyvers*, 9 F.2d 32 at 34, the court said: "It is clearly negligent on the part of anyone, whether stranger, invitor or employer, with knowledge of what is to be done to maintain a place which is not reasonably safe, in view of the activities and operations therein mutually contemplated."

In the present case it was mutually contemplated that the employees of the contractor would be working on premises in control of Union Starch. Therefore, the duty is the same, although it is stated differently. In one case the duty is to keep the premises reasonably safe and in the other, the duty is to furnish a safe place to work. Able defense counsel recognized this similarity at the instruction conference when he objected to the giving of the safe place to work instructions, not on the ground that no duty was owed to Nowicki, but rather on the ground that they were redundant.

We are dealing here with a case where the employer of the contractor asserted an unusual amount of control over the manner in which the work was performed, was unusually negligent and furnished the working areas where his own and the contractor's employees worked.

In *Douglass v. Peck & Lines Co.*, 95 A. 22, at 25, the court said: "Whether the owner remain in partial use of the premises or not, he is liable for injury caused to the contractor or his servants by his own negligence. So, too, he is liable for failure to perform any positive duty imposed by law. If the failure to give this warning, or to refrain from negligent conduct, or to obey the law, makes the place where the con-

tractor or his servant is working not a safe place, in this sense it may be said the owner owes the duty of keeping the place where the contractor or his servants are at work safe."

In the present case there is no question but that there was a hole in the roof of the premises; that water came through that hole and caused the place where plaintiff was working to become wet and slippery and that this condition had existed before.

I must also emphasize that in the present case we have a knowledgeable landowner, experienced and skilled in safety engineering, familiar with the hazards of construction and who, in the exercise of prudence and due care, could have prevented the accident in question. He should not be measured by the same standards governing a landlord's duty to an invitee, in a case where the landowner is a householder or a small businessman, unaware of safety engineering.

In *Storment v. Swift & Co.*, 5 Ill.App.2d 417, the trial court entered a judgment notwithstanding the verdict against the plaintiff on the ground "that the law is well-settled that a person has no right to knowingly expose himself to danger and then recover damages for an injury which might have been averted by the use of reasonable precaution for his own safety."

Storment was a federal meat inspector who contended that the defendant company failed to maintain its premises in a reasonably safe condition, and failed to provide safe methods and instrumentalities so that plaintiff had a reasonably safe place to work and perform his inspection duties.

The contention was made in the trial court that Storment was guilty of contributory negligence because he knew the condition as well as Swift did and should have protected himself; that he continued to work in the face of a known and observable danger and assumed the risk and was guilty of contributory negligence as a matter of law. The Appellate Court stated on pages 422 and 423:

"* * * It is apparent that the defendant company had a duty to maintain its premises in a reasonably safe condition, and conduct its operations in a reasonably safe manner for the performance of the work of plaintiff, since his presence and duties require him to be on the premises (Cudahy Packing Co. v. Luyben, 9 F.2d 32, 34; Cudahy Packing Co. v. McBride, 92 F.2d 737, 739; Swift & Co. v. Schuster, 192 F.2d 615).

Under the facts before us the question of defendant's negligence was a jury question and contributory negligence, if any, being a matter with respect to which reasonable minds might differ, under the facts,

was also clearly a question for the jury. Knowledge of the working conditions which might involve some risk did not, as a matter of law, under the facts, constitute contributory negligence (Swift & Co. v. Schuster, supra, at 616)."

In the present case the real question is: Does the employer of a contractor who insists that the contract work be done while the plant is in operation, who furnishes the premises where the work is being performed and who is in control of those premises, who negligently creates conditions which make the work of the contractor's employees more dangerous, owe a duty to an employee of the contractor when the dangerous conditions are known to that employee and he continues to work on the premises under the dangerous conditions?

Knowledge of potentially dangerous working conditions does not convict the injured person of negligence as a matter of law. Knowledge is merely an evidentiary factor bearing on his conduct and never conclusive. A good statement of this principle is found in the case of *Frost v. McCarthy*, 200 Mass. 445, 448, 86 N.E. 918: "Although the terms 'knowledge of danger' and 'appreciation of risk' are frequently used in discussion of due care, still these elements in and of themselves do not constitute negligence, as a matter of law. These expressions are valuable aids in describing what may be found as matter of fact to constitute negligence. They aptly define what is evidence of negligence, but do not state that which is always such conclusive and indubitable want of care as to constitute negligence as a matter of law." The Supreme Court of New Hampshire stated it this way: "The only logical conclusion which can be reached, when all the cases which have considered the right of those who were injured while voluntarily encountering a known danger to recover are read together, is that the facts that they knew of the danger incident to the condition of which they complain and voluntarily encountered it are not, in and of themselves, conclusive of their right to recover, unless the danger is so great that the ordinary man would not have done what they did. In all other cases these facts are merely evidence to be considered with other relevant facts on the issue of their care." *Kambour v. Boston, etc., RR. Co.*, 77 N.H. 33, 49 86 A. 624, 45 L.R.A.N.S. 1188.

The foregoing is especially true when the injured party is where he is as a matter of right and in the performance of a duty. In 65A C.J.S., Par. 126, p. 87, the principle is stated to be: "If a person in doing that which it is his right to do in the discharge of his duty, exercises ordinary care and prudence, he is not chargeable with contributory negligence as a matter of law although the result showed that he imperiled his life or personal safety in doing as he did. Notwithstanding one is acting in the

discharge of his duty, he is guilty of negligence if he incurs a risk of injury which would not be incurred by an ordinarily prudent man under the same or similar circumstances.

In my opinion, the State of California through its Supreme Court adopted a sensible, up-to-date and humane rule in *Florez v. Groom Development Co.*, 348 P.2d 200, when it used the following language at 206-07:

"* * * An invitee, while properly using the portion of the premises to which the invitation extends, is not required to be, nor is he held to the duties of, an inspector. (Cases cited.) Certainly 'an invitee is not required to look for hidden traps.' (Cases cited.)

It is also the law that a workman on the job, doing the job he was hired to do, is not required to exercise the same quantum of care that may be required of other invitees. As was said in Austin v. Riverside Portland Cement Co., 44 Cal.2d 225, at page 239, 282 P.2d 69, 77: '* * * where a person must work in a position of possible danger the amount of care which he is bound to exercise for his own safety may well be less by reason of the necessity of his giving attention to his work than would otherwise be the case. [Citing cases.]

In the instant case, appellants assume that their negligence, if any, was in using a plank that was too narrow or too short, and contend that these defects were clear and obvious, and should have been seen by respondent. It is urged that the very facts relied upon by respondent to support the inference of negligence also demonstrate that respondent was contributively negligent. This argument proceeds on the theory that the quantum of care required of the invitor and invitee are identical. That is not the law. Even if the only negligence involved was in furnishing a plank that was too short or too narrow, or both, the question as to whether respondent as a workman-invitee acted reasonably in using it was a question of fact for the jury. The cases already cited support this principle. It must not be forgotten that respondent's duties as an employee required him, in the course of his employment, to use water, and so far as he knew, the faucet in question was the only place where water was available. The dangerous plank was the only means furnished to reach that faucet. The jury was entitled to balance the respondent's necessity against the danger, even if it be assumed that it was an apparent one. This was a factual issue. [Cases cited.]

Thus, even if it be assumed that the only negligence involved, or that could have been involved, was in furnishing a plank that was too short or too narrow, or both, and that such condition was readily apparent, the jury properly found for respondent."

However, assuming that *Craig v. Olin Mathieson, supra,* is factually in point with the present case, I still do not agree with its rationale because contrary to Illinois law it applies the outmoded assumption of the risk doctrine under another name.

In *John F. Devine v. National Safe Deposit Co.,* 240 Ill. 369, 88 N.E. 804 (1909), an employee of a tenant knew of the unguarded elevator shaft opening but fell in and was killed. In holding decedent was not guilty of negligence as a matter of law, the court said, l.c. 374: "It cannot be said, as a matter of law, that Daly was not in the exercise of due care for his personal safety when he received the injuries, *merely because he made use of the platform with full and complete knowledge of the danger.* City of Streator v. Chrisman, 182 Ill. 215, and cases there cited; Palmer v. Dearing, 93 N.Y. 7; Dewire v. Bailey, 131 Mass. 169; Hopkinson v. Knapp, 92 Iowa 328; Am. & Eng. Ency. of Law 332. Appellant concedes that the doctrine of assumed risk can have no application here, but insists that the fact that the deceased 'knew and appreciated the danger and voluntarily continued his work without objections' bars a recovery under the rule 'that he who consents cannot afterward complain.' *Appellant's argument is, in this regard, merely an attempt to apply the doctrine of assumed risk and to give to it another name.*" Emphasis added.

In *Mueller v. Phelps,* 252 Ill. 630, 97 N.E. 228, a cook employed by a tenant of a building thrust his head into an elevator shaft and was injured by a descending elevator. In holding contributory negligence to be a jury question, the court said, l.c. 633: "The argument, however, urged in support of contributory negligence is, substantially, that defendant in error knew and appreciated the danger of using the elevator. *This is practically seeking to apply the doctrine of assumed risk under another name.* The doctrine of assumed risk cannot apply here, as there was no contractual relation between defendant in error and plaintiff in error [Citing cases.] The question of contributory negligence is usually a question for the jury. It only becomes one of law for this court when the undisputed evidence is so conclusive that it is clearly seen that the accident resulted from the negligence of the party injured and could have been avoided by use of reasonable precaution. [Citing case.] Where reasonable men acting within the limits prescribed by law might reach different conclusions, or different inferences could reasonably be drawn from the admitted or established facts, the question of contributory negligence is for the jury. [Citing authority.] On the record in this case we think it was a question of fact to be submitted to the jury whether defendant in error was exercising ordinary care at the time of the accident. [Citing cases.]" Emphasis added.

In *Riordon v. Thompson & Starrett Co.*, 204 Ill.App. 488, the court permitted recovery by the plaintiff, an employee of a subcontractor, against the general contractor because of the absence of a handrailing on a stairway, even though plaintiff had used the stairway before. The court placed emphasis on the fact that several hundred men had gone up and down this stairway daily. In answer to the contention that the plaintiff could not recover because he had knowledge of the danger and voluntarily exposed himself to it, the court said that the doctrine of assumed risk is only applicable to the master and servant cases and that this was merely an attempt to apply the doctrine of assumed risk and give it another name.

The rationale of *Craig v. Olin Mathieson, supra,* was erroneously taken from *Calvert v. Springfield Electric Light & Power Co.*, 231 Ill. 290, and *National Builders Bank v. Schuham*, 319 Ill.App. 546. The *Calvert* decision did not turn on whether or not the condition was known to the landlord and not to the invitee; but rather, was based upon the fact that the condition which caused plaintiff's injury was not plainly visible to plaintiff. The court did go on to say that if the hole in the roof was visible to the plaintiff, it would not hesitate to hold that there could be no recovery on account of the assumption of the risk by appellee's intestate.

However, even if we would follow the dictum of *Calvert*, I would say it would be more reasonable to say that *Calvert* holds that in this situation assumption of the risk is a defense and then we should use the guidelines set out in our master and servant cases, the last of which is *Clubb v. Main,* written by Justice Goldenhersh, 65 Ill.App.2d 461, 213 N.E.2d 63, and under that case the standard would be a subjective one and dependent upon what the plaintiff sees, knows, understands and appreciates.

In *National Builders Bank v. Schuham, supra,* the deceased was repairing a window frame and window sash and met his death when he fell out of the window opening. The court there did not hold the defendant not liable because the defects responsible for the injury were known to the contractor or his employees, although it said in view of the facts and circumstances as to decedent's conduct, it might well be held as a matter of law that he was guilty of contributory negligence and that he assumed the risk of being injured in the manner in which he was injured, etc. Instead, this decision turned upon the fact that there was no proof of defendant's negligence because defendant neither knew or could have known of the defective condition which caused decedent's death. Again assuming that this case is a proper citation that one cannot recover for an open and obvious condition that he knows of, still this is not authority for saying this was lack of duty on the defendant, but rather

is authority for saying that under these conditions this was an assumption of the risk or failure to prove freedom from contributory negligence. If this is true, then we would have the same rules as laid down in *Clubb v. Main, supra.* Defendant would also be faced with the affirmative defense of showing that the condition that caused Nowicki's injuries arose out of the character of the work he was doing and also did not arise from the negligence of the defendant, which in my opinion, would be an impossible burden under the undisputed facts in this case.

Prior to 1963, Rule 343 of the Restatement, published by the American Law Institute, provided:

"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger."

Harper and James in their work, The Law of Torts, Vol. 2, § 217.13 (1956) criticized this rule, saying that "the principle there enunciated is a doubtful one on both principle and authority." They pointed out at pages 1493-1495 that the fact that a condition is obvious did not always remove all unreasonable danger.

In 1963 and 1964 the American Law Institute revised Rule 343 by adding Rule 343A which provides:

"343A. Known or Obvious dangers.

(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness."

In their supplement to Volume 2, Harper and James, published in 1968, the authors point out at page 193:

"The most significant development in the subject matter of the section (27.13) has been the American Law Institute's adoption of a new section which at least goes a long way towards meeting the objections taken in the text to the original Restatement position, and towards adopting the reasoning here expressed. Restatement of Torts Second § 343A(1) reads as follows:  *  *  *."

I would affirm the judgment of the trial court.