ERNEST HAROLD DANIEL, appellee, v. S - Co CORPORATION, d/b/a "JUMPIN GYMINY TRAMPOLINE CENTER", appellant.

No. 51085.

(Reported in 124 N.W.2d 522)

NOVEMBER 12, 1963.

Seymore M. Raben, of Davenport, for appellant.

Doerr, Dower & Rehling, of Davenport, for appellee.

PETERSON, J.—Plaintiff brought this action at law to recover damages for personal injury to himself which resulted from his use of a device known as a "trampoline" on July 11, 1960. Defendant was the owner and operator of a commercial establishment featuring trampolines for use by the public. The case was submitted to the jury and a verdict was returned in favor of plaintiff in the amount of $6500. From this verdict and the judgment thereon, defendant appeals.

Appellant raises two matters in which it claims the court erred: 1. Whether there is sufficient evidence in the record to show any negligence on the part of defendant. 2. Whether any warning, instruction or supervision by defendant to plaintiff was necessary and was the failure to give same, negligence on the part of defendant.

I. Plaintiff is 35 years of age, a college graduate and is engaged in the work of certified public accounting. On July 11, 1960, at about eight o'clock p.m., he took his little girl, four years of age, to defendant's trampoline center in the city of Davenport. It was still daylight. The center involved in this case is one of five such centers maintained by defendant in Davenport.

He paid the cashier in her office for the entrance fee and walked with his little girl out upon the area in which was located a large number of trampolines. Exhibit "2", shown here, is a photograph of one of the trampolines.

Plaintiff's Exhibit 2

On the north, east and south walls of the fence surrounding the trampoline area appear large notices as to "RULES FOR YOUR SAFETY AND PLEASURE." Two such notices also appear in the office where plaintiff purchased his tickets. The notices are in accordance with Exhibit "A" below.

Defendant's Exhibit A

At first plaintiff's little girl stepped upon a trampoline and jumped. Being very light she never jumped very high. Plaintiff states perhaps to the extent of one foot. She took off her shoes before stepping upon the trampoline.

Plaintiff then took off his shoes and stepped on one of the trampolines and started to jump. He states he jumped about five times. After so stating his testimony was as follows:

"Q. Then what happened? A. Well, all I can truthfully remember of it is starting to bounce and the next thing I knew I was waking up over on the side of the pit, lying, I don't remember whether on my back or my stomach. There were two young fellows there that came over at that point. One said something about, 'Your Uncle should have blankets here for accident cases like this. * * *' "

II. The above quoted statement constitutes plaintiff's complete evidence as to the incident of his fall. In his cross-examination he made approximately the same statement. The evidence of the two young men, testifying for defendant, to whom he refers in his statement, also appears in the record. Such evidence does not enlighten us as to what happened concerning plaintiff's fall.

The boys testified they saw plaintiff and his little girl come into the amusement center. They saw the little girl jump on one of the trampolines. They then saw Mr. Daniel take off his shoes and step upon the mat on another trampoline and saw him jump a few times. They did not pay any further attention to him. They said there had been between 2500 and 3000 people through the amusement center that season and they paid no particular attention to any individual person. Their attention was first attracted when they heard a fall.

Mr. Gary Richards, the first witness, stated:

"The first time I realized that Mr. Daniel had any difficulty is when I saw him laying down. I heard a bang and heard the springs snap. That is when I turned around and saw him laying there. I went over to the man and he was laying on the ground kind of on his side. I rolled him over and took my sweat shirt off and put it under his head so his head wouldn't be laying on anything hard. I told Rich [the other witness]

to get me a wet cloth because he was perspiring and I wiped the perspiration off him and told Mrs. Lindbloom to call the ambulance.

"After the accident, I looked at the trampoline and Rich went over and bounced on it. There was nothing wrong with it except the springs stretched a little, but that is only natural. There was nothing else wrong with it."

The other young man witness, Mr. Richard Geifman, testified to the same effect.

On the above state of the record we can only speculate, conjecture and wonder as to what happened to Mr. Daniel. There is nothing in his testimony, nor in the statement by the young men working in the amusement area, which indicates any negligence on the part of defendant. While the trial court instructed the jury, as hereinafter stated, as far as the evidence was concerned the jury could only speculate and conjecture as to what happened. It was impossible, from the state of the record, for the jury to have before it any tangible facts upon which to decide whether defendant was negligent.

Appellee and his counsel are silent as to the facts concerning how plaintiff was injured. In other words, they pay little attention to the internal conditions of the trampoline, in connection with plaintiff's fall.

They base their case in their petition, and the trial court based it, upon external conditions as far as plaintiff's fall and injury are concerned.

In his petition plaintiff alleges three items of negligence upon which he bases his claim. 1. Failing to warn plaintiff as to the inherent dangers in the device. 2. Failing to provide trained supervisory personnel to instruct and protect plaintiff. 3. Akin to No. 2 is the further claim that defendant permitted plaintiff, an inexperienced person, to use the device without instruction or supervision.

III. When the court submitted the case to the jury it restricted the matter of specifications of negligence to two parts: 1. In failing to warn plaintiff of the inherent danger in the use of the trampoline. 2. In permitting plaintiff, an inexpe-

rienced person, to use said device without instruction or supervision by defendant.

Defendant did, in fact, warn plaintiff. Five sets of heavily printed instructions were placed either upon the fence or in the office of the amusement center. The instructions were in accordance with defendant's Exhibit "A", heretofore shown. All plaintiff had to do in order to be fully informed was to read them. He was an especially intelligent college educated man of 35 years of age. There was no hidden danger involved in the trampoline. It was an athletic exercise of jumping upon the mat. It is true it was plaintiff's first experience in this type of amusement. The complete mechanism was in full view of plaintiff and the instructions were clear and definite. In the face of the record and the circumstances there was no question to be submitted to the jury.

As far as instruction and supervision are concerned the posted notice stated in plain language that if plaintiff desired instruction he could ask for it. He testified categorically he did not ask for any instruction. As far as supervision is concerned it was not necessary that defendant place someone at every trampoline to observe the users. As near as we can tell from plaintiff's evidence, his fall would have happened as it did even if defendant had a dozen supervisors surrounding the trampoline and watching plaintiff.

IV. Appellee does not cite nor quote from any trampoline cases. The cases cited in support of appellee's position are largely cases having to do with injuries in darkened theaters or in stores. To a certain extent they are analogous, but the only analogy is that a theater and store owner must use ordinary and reasonable care to keep the premises in a reasonably safe condition for customers. The same is true with reference to someone engaged in defendant's type of business. Plaintiff produced no evidence showing that any other condition existed, except ordinary and reasonable care on the part of defendant.

Several cases somewhat analogous to plaintiff's case are cited by appellant. The case of Hecht v. Des Moines Playground and Recreation Assn., 227 Iowa 81, 99, 287 N.W. 259, is, in fact, cited by both parties. This was a case where a boy eleven

years of age was drowned in a swimming pool. The court directed a verdict for defendant on the general theory that there was no negligence in permitting the boy to enter the swimming pool area and in connection with his drowning which was unknown to defendant. The court made one significant statement: "Negligence to be actionable must be fastened to the injury. The appellant failed to do either." This statement pertains to the case at bar.

Also see In re Estate of Held, 231 Iowa 85, 300 N.W. 699, in which the court said a jury must not be allowed to speculate and guess concerning an alleged issue not sustained by substantial evidence.

Appellant cited and quoted from two trampoline cases. This was apparently all that could be found by either party, and the court upon search is unable to find any others. Myers v. Sky Jump, Incorporated (Tennessee Court of Appeals), copy of opinion attached to appellant's argument. The injury happened to Margaret Ann Myers, age 14. She injured her right foot as she attempted to leave one of the trampolines. The assignments of error were approximately the same as appear in the instant case. In the opinion the court stated:

"There is no proof that defendant's trampolines were improperly designed or maintained; that they were in any way defective or that they could have been so designed as to remove the hazard inherent in using them without also removing their attraction to invitees. And it is not claimed that the trampolines constituted a nuisance or were being operated in violation of law. Nor is there any proof that instructions as to how to use them or more supervision could and would have removed the danger of becoming unbalanced and stepping between the springs in dismounting.

"It is well settled that a proprietor of a place of business is not required to warn invitees of a hazard which is open and obvious and as well known to the invitee as to the proprietor. Kendall Oil Co. v. Payne, 41 Tenn. App. 201, 293 S.W.2d 40, and see 52 Am. Jur. 299, where it is said:

" 'Since the basis of a proprietor's liability for injury to an invitee is his superior knowledge, if the invitee knows of the

condition or hazard the proprietor is under no duty to warn him . . . . since the invitee has as much knowledge as the proprietor and by voluntarily acting in view of his knowledge assumes the risks and dangers incident to the known conditions.' "

Also see 86 C. J. S., Theaters and Shows, section 42(d), where it states: "The proprietors or owners of places of public amusement are required to warn patrons of dangers, which to them are hidden and latent, or not reasonably observable in the exercise of care by an ordinarily intelligent person, but which are either known to the owners or proprietors, or, in the exercise of reasonable care, could have been known or foreseen by them. However, it is not their duty to warn patrons of obvious or known risks or dangers to which they voluntarily subject themselves, as where the danger is such that it is observable to a patron in the exercise of reasonable care for his own safety."

The other trampoline case is Williams v. Lombardini, 38 Misc.2d 146, 148, 149, 238 N. Y. S.2d 63, 65, 66. This case involved a young man nineteen years of age. The court said:

"Here, the plaintiff was sui juris, being a young man nineteen years of age and a student at Yale University. One of his age, education and intelligence must be presumed to have foreseen that when he propelled himself through the air in a forward flip or somersault by means of this device [trampoline] he ran the risk of landing either on the framework or beyond in such a fashion as to cause injury.

"Certainly the danger was obvious to one reasonably mindful of his own safety. What he did was entirely voluntary and for the personal thrill involved in the exercise so undertaken. The assumption of the risk negatives any duty which might otherwise have been owed him by the defendants."

It is true these cases were decided largely on the basis of assumption of risk, which is not definitely an issue in the instant case, but they are general precedents as to trampoline cases.

Plaintiff has failed to establish any negligence upon the part of defendant. The case is reversed and the trial court is

instructed to enter judgment for defendant notwithstanding the verdict.—Reversed.

All JUSTICES concur.