**Richard K. Ragni, Plaintiff-Appellant, v. Lincoln-Devon Bounceland, Inc., Defendant-Appellee.**

**Gen. No. 50,987.**

First District, Fourth Division.

January 15, 1968.

Hinshaw, Culbertson, Moelmann & Hoban, of Chicago (Donald W. Garlinger and John P. Graves, of counsel), for appellant.

Rothschild, Hart, Stevens & Barry, of Chicago (Norman J. Barry and John J. Coffet, III, of counsel), for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the court.

Plaintiff sought damages for injuries he received while using the equipment at defendant's outdoor trampoline park. From the direction of a verdict at the close of his evidence, plaintiff appeals contending (1) that certain testimony of his expert was improperly excluded; (2) that there was evidence that defendant failed of its duty to warn plaintiff of certain dangers inherent in the equipment; and (3) that there was evidence that defendant negligently and inadequately supervised the trampoline park.

On September 4, 1960, plaintiff, with his then fiancee, went to defendant's trampoline park. He paid the fifty cents admission which entitled him to the use of a trampoline for a half hour, although the rules prohibited his remaining on the trampoline for more than three minutes at a time. The trampoline was a nylon mat four feet wide and eight and one-half feet long, suspended over a shallow trench (so that it was flush with the ground) by steel springs. The springs were attached to a steel frame which completely surrounded the trampoline and which was bolted to a wooden frame. The steel frame was covered with foam padding about one and one-half inches thick. Plaintiff, then twenty-six years old, had received trampoline instructions in a college physical education course in which he had spent a total of thirty minutes throughout the course actually practicing on the trampoline. On the day in question he bounced on the trampoline for a short while and then his fiancee used it. Feeling that she was not bouncing correctly she got off and he returned. He did two standard bounces and on the third

bounce fell into the springs, striking the padded steel frame with his buttocks, causing him to black out.

The park was managed by a man who had no training in trompolining but there were three or four men on duty at the time who had received instruction in using the trampoline. These men walked around the trampolines to make sure that the customers did not do anything wrong. There was a sign posted stating that customers could receive special instruction for a fee and other signs throughout the park containing certain rules for using the trampolines safely. A loudspeaker system emanating from the cashier's cage was used to stop people from "goofing around."

Plaintiff's expert, Anthony Matic, testified that based on his experience with indoor trampolines, customary procedure required that a spotter stand at one corner of the trampoline and attempt to prevent the trampolinist from falling against the frame. He testified that he had taught trampolining to boys on Saturday mornings for the past fifteen years and that they always used at least one spotter and occasionally three or four "in advance cases."

Plaintiff first contends that Mr. Matic should have been allowed to testify in three situations. Mr. Matic was prevented from answering (1) whether or not the conditions at Bounceland conformed to customary safety procedures; (2) what was the effect of the padding over the metal frame in preventing injuries; and (3) whether there was a causal relationship between the frame padding and the injury. Defendant lodged general objections to all three questions whereupon the court and counsel retired to chambers. There, in response to plaintiff's request for greater specificity, defendant said that the expert was not qualified, that he was being asked to testify to an ultimate issue in the case and that the hypotheticals did not contain all the facts in evidence. On appeal plaintiff argues that defendant's objections were

general and therefore insufficient. Defendant argues that they were cured by the discussion in chambers and that they should be sustained. For purposes of argument we will assume, without deciding, that the testimony should have been allowed and analyze plaintiff's second and third contentions in the light of his offer of proof. If permitted, plaintiff's expert would have testified in substance that three or four people were not adequate to supervise twenty-five trampolines when there could be as many as seventy-five people in attendance, that the padding over the frame would give the trampolinist a false sense of security and that the padding was inadequate to prevent spinal injuries.

Plaintiff secondly contends that the presence of the one and one-half inch thick pad over the trampoline frame misled him and that defendant was under a duty to warn him that there was a hard substance beneath the mat which could cause him injury should he land on it. Plaintiff cites Calvert v. Springfield Elec. Light & Power Co., 231 Ill 290, 83 NE 184. In that case a man was killed when he went upon defendant's roof to work on a smoke-stack. He fell through a weak spot in the roof which was visible to those inside but not visible from above. The court said at page 293:

> The law is well settled that an owner or occupant of land who by invitation, express or implied, induces or leads others to go upon premises for any lawful purpose is liable for injuries occasioned by the unsafe condition of the land or its approaches, if such condition was known to him and not to them, and was negligently suffered to exist without timely notice to the public or to those who are likely to act upon such invitation, and if there are *hidden dangers* upon the premises he must use ordinary care to give persons rightfully upon the premises warning thereof, and that the owner owes such duty to an in-

175

dependent contractor or his servants while working upon his premises. (Emphasis supplied.)

Plaintiff also cites Corpus Juris Secundum, Vol 86, Theaters and Shows, § 42d:

> The proprietors or owners of places of public amusement are required to warn patrons of dangers, which to them are hidden and latent, or *not reasonably observable in the exercise of care by an ordinarily intelligent person,* but which are either known to the owners or proprietors, or, in the exercise of reasonable care, could have been known or foreseen by them. (Emphasis supplied.)

In Daniel v. S-Co Corp., 255 Iowa 869, 124 NW2d 522, an Iowa case, plaintiff was injured on a similar outdoor trampoline which also had padding covering the frame. There was no warning of the fact that a hard substance lay under the pad or that it was unsafe to land on the frame pad. In ordering the trial court to enter a judgment n.o.v. the court said at page 526:

> He was an especially intelligent college educated man of 35 years of age. There was no hidden danger involved in the trampoline. It was an athletic exercise of jumping upon the mat.

And at page 527:

> It is well settled that a proprietor of a place of business is not required to warn invitees of a hazard which is open and obvious and as well known to the invitee as to the proprietor . . . (Cases cited.)

In Williams v. Lombardini, 38 Misc2d 146, 238 NYS2d 63, plaintiff was injured when he hit his nose on the padded frame of a similar outdoor trampoline. The court said at page 66:

Certainly the danger was obvious to one reasonably mindful of his own safety.

■ In, the instant case plaintiff was twenty-six years old and had received instruction on indoor trampolines in college. We do not believe he needed to be told that the nylon mat in the middle of the trampoline was the only safe place to land. Defendant was under no duty to warn him that landing on the padded frame was unsafe.

■ Plaintiff's third contention is that defendant failed its duty of supervision. In Corpus Juris Secundum, Vol 86, Theaters and Shows, § 42a, cited by plaintiff, it is said:

> . . . The duty to exercise ordinary or reasonable care is fulfilled where the place of amusement is made as little dangerous *as it can reasonably* be made having regard to the contrivances necessarily used in conducting such a place. Care must be exercised to make the place of amusement *as safe as is reasonably consistent with the practical operation* thereof, and be reasonably adapted to the construction of the place . . .

Plaintiff's expert Matic stated that three or four men could not adequately supervise twenty-five trampolines. He testified that in his trampoline experience one man, a spotter, generally stood at one corner of the trampoline attempting to prevent accidents like Ragni's by pushing the trampolinist back toward the mat, that in advance cases as many as four spotters were used, that his experience with trampolines had come largely from teaching boys on Saturday mornings at an athletic club in an indoor gym, that he had discussed trampolines at meetings of a national association of directors of athletic clubs, that his experience was with indoor trampolines but that he was familiar with outdoor operations and he

felt that the applicable safety features were "pretty much the same."

In Daniel v. S-Co Corp., supra, the court said:

> . . . As far as supervision is concerned it was not necessary that defendant place someone at every trampoline to observe the users. . . .

In Fein v. Board of Education of City of New York, 104 NYS2d 996, plaintiff was injured when he fell off of a chinning bar in defendant's gymnasium. There was one supervisor in the gymnasium observing the use of the equipment there and one in the locker room assisting an incoming gym class. The court said at page 999:

> It was not the duty of the defendant to place each and every piece of equipment, including the chinning bar, under the direct management or supervision of an instructor or other attendant or to have somebody in close proximity to the equipment who might have prevented the accident. Such a requirement under well-settled principles, would be unreasonable. (Cases omitted.)

Plaintiff, however, argues that Brumm v. Goodall, 16 Ill App2d 212, 147 NE2d 699, is controlling of the instant case. In that case plaintiff's decedent drowned in defendant's swimming pool. The court held that the jury could find that in view of the size and depth of the pool and the presence of approximately 175 people, there should have been two guards in the deep end rather than one. It is difficult to see how this case could control the situation before us. What is reasonable supervision depends on the facts of each case and there is little relationship between the number of supervisors necessary to guard a swimming pool and those necessary to watch a trampoline. Similarly there is little relationship between the supervision of boys in an indoor gymnasium of a

private athletic club and the supervision of an adult at a public outdoor trampoline park where the fee for the use of the trampoline is fifty cents a half hour. Plaintiff did not show that the supervision in the instant case was not reasonably consistent with the practical operation of a trampoline park nor did he establish that there was a custom to provide one or more spotters for each trampoline in a public outdoor trampoline park.

In view of the foregoing the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

McCORMICK, P. J. and ENGLISH, J., concur.